154 N.J. Super. 301 (1977)
381 A.2d 374
NANCY BARRIE, PLAINTIFF-APPELLANT,
v.
RICHARD BARRIE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1977.
Decided November 10, 1977.
*302 Before Judges ALLCORN, MORGAN and HORN.
Mr. I. Michael Heine argued the cause for appellant.
Mr. John Diaz argued the cause for respondent (Messrs. Kramer and Diaz, attorneys).
PER CURIAM.
Plaintiff appeals the denial of her motion to rescind a matrimonial property settlement agreement and *303 to vacate that portion of a final judgment of divorce in which the negotiated property settlement agreement was incorporated by reference or, in the alternative, to grant a plenary hearing to determine whether the portion of the judgment mentioned above and the property settlement agreement should be rescinded.
The trial judge, after hearing oral argument and considering the affidavits and certifications filed by each party, concluded that plaintiff had failed to establish a prima facie case for relief on the basis of the affidavits and certifications presented by both parties. Consequently he denied the motion in its entirety.
The motion was brought pursuant to R. 4:50-1(f), which provides:
On motion, with briefs, and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (f) any other reason justifying relief from the operation of the judgment or order.
Before proceeding to the merits of the issues raised in this appeal, we observe that a plenary hearing is not mandated ipso facto by a motion. In Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976), we held that where the affidavits do not show the existence of a genuine issue of material fact the trial judge need not take oral testimony and may decide the motion without a plenary hearing. In Skillman v. Skillman, 136 N.J. Super. 348, 350 (App. Div. 1975), we referred to the need for a "sufficient prima facie case" to entitle a moving party to a plenary hearing. See also Hallberg v. Hallberg, 113 N.J. Super. 205, 208 (App. Div. 1971).
There is, of course, no doubt that plaintiff was not entitled to either a reopening of the judgment or to a rescission of the settlement agreement merely by virtue of her affidavit and certifications. The fundamental issue before us is whether she was entitled to an evidentiary hearing on the basis of the record made below. The answer to this *304 question in the light of the holdings of Shaw, Skillman and Hallberg, supra, depends upon whether that record indicates that there was a reasonable probability that plaintiff might be entitled to the relief sought.
In the words of Court Invest. Co. v. Perillo, 48 N.J. 334 (1966):
Such a motion under (f) is addressed to the discretion of the trial court. That discretion is a broad one to be exercised according to equitable principles, and the decision reached by the trial court will be accepted by an appellate tribunal in the absence of an abuse of its discretion. No categorization can be made of the situations which would warrant redress under subsection (f). As Justice Proctor noted in Hodgson v. Applegate, 31 N.J. 29, 41 (1959), the very essence of (f) is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice. [at 341]
The parties separated in 1973, after ten years of a marriage which produced two daughters. In 1975 the children were six and four years of age. On January 19, 1974 plaintiff engaged the attorney who represented her until after the divorce proceedings were completed. That attorney filed the action for divorce in October 1974. There is no dispute that the challenged agreement was the product of negotiations for a considerable interval before it was executed on June 4, 1975 and its subsequent revisions on June 17, July 2 and July 16, 1975. On August 7, 1975 plaintiff testified at the divorce hearing before the same judge from whose order this appeal was taken. At the conclusion of the hearing the agreement was made a part of the judgment by reference.
The settlement agreement is not unconventional either in form or in substance. Essentially, it provides for custody of the children in plaintiff with rights of visitation for defendant. The children are to be supported by defendant by payment to plaintiff of $5,000 a year for each and certain other benefits at defendant's expense, such as summer camp, medical care and being named as beneficiaries in a life insurance policy on defendant. Plaintiff received $40,000 a *305 year by way of permanent alimony (subject to her payment of income taxes thereon), a lump sum support payment of $12,750, a new automobile, life insurance on defendant's life and the use of a New York City apartment rent free for one year. Under the caption "Equitable Distribution" defendant agreed to pay to plaintiff by certain installments, tax-free to her, the sum of $250,000, together with interest on the unpaid balances, "in full and complete satisfaction of any and all claims which [she] may have against [him] including her rights to equitable distribution under N.J.S.A. 2A:34-23 * * *."
Plaintiff's affidavit in essence asserts that as the consequence of mental problems engendered by her husband's infidelity, indifference to and mistreatment of her:
When I executed the Property Settlement Agreement and authorized the subsequent consent Order of Divorce which incorporated by reference that Agreement, I was suffering a nervous breakdown and was mentally incompetent. I did not then have the emotional and intellectual ability to handle my matters and to deal realistically with the issues which faced me at that time. * * *
By letter certification addressed to plaintiff's attorney, Dr. A. David Etess, a psychiatrist of New York City, stated that plaintiff "was in a psychoanalytically-oriented psychotherapeutic relationship" with him from April 8, 1974 to July 30, 1975, first on a bi-weekly and later on a weekly basis. His opinions as to her mental state are not focused on any specific time but range over the approximately 16 months that he saw her. He certified that her "judgment was faulty and she had no capacity to comprehend or follow through (goal directed) on any insights, suggestions or interpretations that were made to her." She failed in a business venture because she had "no business acumen." She was "not of sound mind and was emotionally unfit to govern herself or her affairs * * *. Her judgment was faulty to the extent that she could not possibly comprehend in any reasonable and self-protective manner the nature and effect *306 of any decision-making process." His diagnosis was depressive neurosis with multiple drug abuse and occasional suicidal ideation.
The affidavits and certifications of various individuals who had occasion to observe plaintiff during the period of time covered by the affidavit and certifications presented by her, together with the transcript of the proceedings before the same judge from whose order this appeal is taken, overwhelmingly refute plaintiff's allegations of incompetency.
These documents to which no reply affidavits were submitted by plaintiff demonstrate that from a description of her activities as well as her statements to them that plaintiff was far from being unaware of the terms of and benefits that she would receive under the challenged agreement. They also demonstrate her knowledge of what she was surrendering.
The transcript of the divorce hearing is enlightening. Following are some excerpts taken from said transcript:
Q Now, Mrs. Barrie, I show you a property settlement agreement which is dated July 29, 1975, do you recognize it? A Yes, I do.
Q Does it consist of 14 pages and 39 paragraphs? A It certainly does.

* * * * * * * *
Q Does this agreement encompass many, many months of negotiations between you and your husband and your respective Counsel? A Yes.

* * * * * * * *
Q Are you familiar with each and every paragraph of the agreement? A Yes.
Q Do you have any questions you would like to ask myself or the Court with regard to the agreement? A No.
Q Do you agree with the agreement concerning negotiations back and forth and you agree to abide by its terms? A Yes.

* * * * * * * *
EXAMINATION BY THE COURT:
Q You agree to accept $40,000 a year payable on equal monthly installments for alimony? A Yes.
Q You understand that subject to the cut-off conditions, that is, for all practical purposes not likely to be modified upwards or downwards? A I understand.
Q This is your bite at the apple? A So to speak.
Q You only get one bite? A I understand.
*307 Q You will receive for the children $5,000 per year, payable in equal monthly installments, but if you remarry and the alimony is discontinued, you will receive $10,000 per year per child for their support in equal monthly installments, is that your understanding? A Yes.
Q Will that be adequate to support the children in the manner that you have been supporting them while you were living with your husband? A Yes, under the conditions that he will provide education beyond that, certainly.
Q Together with the other provisions in the agreement? A Certainly.
Q Now, you will pay the first $50 of any medical expenses not covered by insurance, do you understand that? A I don't believe that was a provision, your Honor, I don't think that that was  I think that $50 represents if I incur, the bill is to be incurred beyond that.
Plaintiff had filed two affidavits challenging the jurisdiction of the State of New York in an earlier proceeding for divorce which had been instituted by defendant. Each is consistent with the other documents submitted by defendant in revealing that plaintiff suffered from no mental impairment. In the words of the judge, she "knew what was going on."
The judge's observations of plaintiff's demeanor, comprehension and speech when she appeared before him at the divorce hearing are entitled to substantial weight. There was no doubt in his mind at that hearing that plaintiff "was lucid and seemed to comprehend what was going on and that she seemed quite competent and in control of herself and be able to comprehend what we were talking about."
We conclude from the record that there was no genuine issue of material fact. Since our view accords with that of the judge, we find that he did not abuse his discretion in denying an evidentiary hearing. Court Invest. Co. v. Perillo; Shaw v. Shaw; Skillman v. Skillman; Hallberg v. Hallberg, all supra. See also, Gulick v. Gulick, 113 N.J. Super. 366 (Ch. Div. 1971), wherein Judge Fritz said:
* * * The end product of such an inquiry is the informed judgment of the judge based on a full presentation of the facts toward the goal of a fair adjudication of support. The significant component is the availability of all facts. Where the parties agree after arms-length negotiation, and the court's approval by incorporation *308 into a judgment appears, I think it can be fairly presumed that the totality of facts was available. To permit a court to be asked on the application of either one of the litigants at some later time to re-examine the facts which they and the court have already considered, toward the end of adding a supervening judgment to the parties' own considered determination, seems to me to be wrong in several respects. First, it fosters a sort of second-bite-from-the-apple philosophy. Either party may consciously accept a voluntary determination of support with confidence that if things do not work out right, he can start all over again. Second, it imposes upon a trial judge the obligation of making a determination as to support, not in the relatively uncluttered arena of a first presentation of the facts, but rather, influenced, subconsciously or otherwise, by the support considerations which the parties have voluntarily assumed after full fact finding, as it were. Third, it encourages something less than the best judgment in the litigants, at the important moment of the divorce, to bring to bear all those factors which might be the subject of proper consideration with regard to the matter of support. Finally, as noted in Martindell, it inflicts on the courts and the parties a heavy and unnecessary burden of belated re-examination. [113 N.J. Super. at 369]
Plaintiff urges that Palko v. Palko, 150 N.J. Super. 255 (App. Div. 1976), rev'd on dissenting opinion, 73 N.J. 395 (1977), mandates at least an evidentiary hearing. We do not agree. The facts are not at all analogous. In Palko the wife, after her husband's death, sought relief similar to that sought by plaintiff in the instant case, based on the husband's deceptions and misrepresentations as to the extent of his financial worth. Allegedly this caused her to accept by way of a settlement agreement less than she would otherwise have accepted. Her allegations were in no way disputed, since the executor of the husband's estate failed to submit any countering affidavit. On this record the Supreme Court agreed with the dissent of Judge Seidman that the wife was entitled to an evidentiary hearing on her motion.
It is clear that plaintiff in the instant case bottoms her claim for relief solely on her alleged mental state  not on any kind of deception by defendant  and the contents of the counter affidavits and certifications obviously dissipate her assertions as well as those of her physician.
For the foregoing reasons the order is affirmed.