NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2097-15T2

MANUEL LIM,

 Plaintiff-Appellant,

v.

ROSEMARIE LIM,

 Defendant-Respondent.

_______________________________

 Submitted March 28, 2017 – Decided May 11, 2017

 Before Judges Fasciale and Sapp-Peterson.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Essex County,
 Docket No. FM-07-163-12.

 Charles P. Cohen, attorney for appellant.

 Paula L. Crane, attorney for respondent.

PER CURIAM

 This is an appeal of two post-judgment orders issued by the

Family Part. The first is the November 6, 2015 order, which among
other relief granted to defendant Rosemarie Lim, directed

plaintiff, Manuel Lim, to provide documents necessary to

effectuate a Qualified Domestic Relations Order (QDRO) and denied

plaintiff's cross-motion for a plenary hearing. The second order,

entered January 8, 2016, denied plaintiff's motion for

reconsideration, amended the May 27, 2015 Amended Final Judgment

of Divorce (AFJOD), awarded counsel fees to defendant and denied

his application for a stay of the order. We affirm both orders.

 I.

 The parties were married in 1993. Two children, who are not

the subject of this appeal, were born of the union. Subsequent

to their marriage, plaintiff secured employment with Burns and

Roe, where he remained employed until his termination in June

2014. As part of his compensation package, plaintiff maintained

a retirement savings account with Burns and Roe.

 On July 18, 2011, plaintiff filed for divorce. Upon the

completion of discovery, trial commenced and on October 8, 2014,

the parties reached a settlement on the issues of child support,

alimony, and equitable distribution, which defendant's counsel

placed on the record. The provisions relevant to this appeal

concern distribution of the Burns and Roe retirement account:

 As to the retirement accounts. First of all,
 the husband has a Burns and Roe retirement

 2 A-2097-15T2
 savings account, with an approximate value of
 $222,000 as of the date of complaint.

 That is a marital asset – asset completely.
 There – all – we're gonna [sic] – talking about
 QDROs – all the QDROs are going to be prepared
 . . . at joint expense. This particular – Burns
 and Roe retirement savings, from the date of
 the marriage – all of it is required after the
 date – from date of marriage to date of
 complaint and all investment experience is
 going to be divided 50/50 between the parties.

Plaintiff's counsel did not raise any objection.

 The court directed the parties to submit a signed agreement

and an AFJOD in approximately three weeks. Notwithstanding this

directive, the proposed AFJOD was not submitted to the court until

several months later. During those months, plaintiff objected to

the exclusion from equitable distribution of another retirement

fund held in defendant's name.

 The proposed AFJOD was submitted under the five-day rule,

Rule 4:42-1(c). Defendant filed no formal objection to the

proposed AFJOD and the court entered the AFJOD, as proposed, on

May 27, 2015. Paragraph 25 of the AFJOD states:

 As to the retirement accounts, the plaintiff
 has a Burns and Roe retirement savings account
 with an approximate value of $222,000 as of
 the date of Complaint. This is a marital asset
 and all Domestic Relations Orders are going
 to be prepared at joint expense. All of it is
 acquired from the date of marriage to date of
 complaint and all investment experience is
 going to be divided 50% to the plaintiff and
 50% to the defendant.

 3 A-2097-15T2
 In July 2015, plaintiff's counsel received a letter, dated

July 20, 2015, from Rosemary Weiss, a (QDRO) consultant for Troyan,

Inc. (Troyan), the pension expert the parties jointly selected.

The letter indicated that plaintiff's Burns and Roe savings plan

was terminated on June 27, 2014.

 In response, plaintiff's counsel advised Troyan that the

Burns and Roe account had been rolled over directly into an

individual retirement account with Vanguard and attached a copy

of the most recent Vanguard statement, which reported a balance

in the account, as of June 30, 2015, in the amount of $353,775.50.

This amount reflected a growth in the account of approximately

$131,775.20, since July 18, 2011, the date the complaint was filed

and also the date the parties agreed was the end date of the

coverture period for purposes of equitable distribution.

 On August 11, 2015, Troyan advised the parties that in order

to determine defendant's share of the former Burns and Roe account,

it required confirmation of plaintiff's termination date from

Burns and Roe, as well as a "copy of each statement from the

Savings Plan from July 18, 2011 to the date of transfer[.]"

Plaintiff failed to provide this information, which resulted in a

motion by defendant seeking an order directing plaintiff to provide

the requested information.

 4 A-2097-15T2
 Plaintiff responded to the motion by filing a cross-motion

seeking in relevant part, the denial of defendant's motion and a

determination that the sum of $222,000 was the total amount to be

distributed between the parties. Plaintiff argued that any

investment experience earned subsequent to the date he filed the

divorce complaint should not be included in any distribution to

defendant. Plaintiff additionally claimed that defendant's

counsel incorrectly stated the terms of the settlement when she

placed the settlement on the record on October 8, 2014, and that

he never agreed to divide the investment experience on a 50/50

basis. Plaintiff also requested a plenary hearing to address the

"distribution of pensions and/or retirement accounts."

 The court conducted oral argument on November 6, 2015, and

rendered an oral decision on that same date. In reaching its

decision regarding distribution of the Burns and Roe account, the

court stated that the distribution amount is "always whatever it

is at the time of distribution and if there [are] increases or

decreases due to market changes, due to passive changes, then the

parties share that." In the order memorializing its decision also

entered on November 6, 2015, the court stated:

 Plaintiff is not entitled to the investment
 experience that has accumulated on defendant's
 share of the account just as defendant is not
 entitled to the investment experience that has
 accumulated on plaintiff's share of the

 5 A-2097-15T2
 account. Troyan, Inc. shall determine the
 amount of investment experience to attribute
 to defendant's coverture share that has
 accumulated since that date.

The court denied plaintiff's request for a plenary hearing.

 Plaintiff moved for reconsideration once again requesting a

plenary hearing or, alternatively, seeking an order directing him

to pay directly to defendant $111,000, "in order to fully and

finally resolve this divorce litigation, without the need for a

new or [another] amended Judgment of Divorce as required by

Troyan's November 18, 2015 correspondence." The court conducted

oral argument on the motion on January 18, 2016, and following

oral argument denied plaintiff's motion.

 In denying the motion, the court characterized the relief

sought by plaintiff as "simply plaintiff's attempt at a fourth

bite at the 'proverbial apple.'" The court specifically found

that

 [t]he November 18, 2015 letter from Troyan
 indicates that plaintiff made no contributions
 to the IRA between the cut-off date of July
 18, 2011 and September 2015. The principle
 funds in this account were deposited solely
 during the coverture period, meaning that the
 entire account, including investment
 experience shall be shared on a 50/50 basis
 pursuant to the parties' agreement.

 The court highlighted that the Burns and Roe account, as of

the date of the hearing on the reconsideration motion, had still

 6 A-2097-15T2
not been divided. Consequently, the court reasoned that "each

parties' $111,000 share has been accruing investment experience

while both shares are still in one account in plaintiff's name."

The court concluded that defendant was therefore entitled to the

investment experience earned on her share while it was being held

in plaintiff's account. The court explained, "[i]f defendant's

share had been earning investment experience in an account separate

from plaintiff's share, plaintiff would not have a claim to that

investment experience. Plaintiff cannot reap the rewards of

defendant's share being invested in his name."

 Addressing plaintiff's argument that Troyan's requirement for

an AFJOD was proof that the settlement terms placed on the record

on October 8, 2014, had changed, the court found the only thing

that had changed was the name associated with the Burns and Roe

account and that this name change was the basis for Troyan's

request for an amended judgment. The court further explained that

it was the same account, with the same funds, which had simply

been rolled over to create a new account, now under the control

of Vanguard rather than Burns and Roe. The court concluded that

Troyan could not effectuate a QDRO on an account that no longer

existed and it was this fact, which prompted the need for a further

amendment of the AFJOD. The present appeal followed.

 7 A-2097-15T2
 On appeal, plaintiff contends the parties' submissions in

support of their motion and cross-motions returnable November 6,

2015, raised genuinely disputed issues that could only be resolved

in a plenary hearing and, therefore, the trial court erred when

it refused to conduct a plenary hearing to ascertain the parties'

intent when they entered into the settlement agreement concerning

the pension distribution of the Burns and Roe account. Plaintiff

also urges this panel to exercise original jurisdiction and order

distribution of all pensions/retirement funds during the period

of coverture.

 II.

 We commence our analysis by highlighting our Supreme Court's

most recent iteration of the import of marital settlement

agreements:

 Settlement of disputes, including
 matrimonial disputes, is encouraged and highly
 valued in our system. "'strong public policy
 favoring stability of arrangements' in
 matrimonial matters." (quoting Smith v. Smith,
 72 N.J. 350, 360 (1977)). This Court has
 observed that it is 'shortsighted and unwise
 for courts to reject out of hand consensual
 solutions to vexatious personal matrimonial
 problems that have been advanced by the
 parties themselves.' Ibid. (quoting Petersen
 v. Petersen, 85 N.J. 638, 645 (1981)).
 Therefore, 'fair and definitive arrangements
 arrived at by mutual consent should not be
 unnecessarily or lightly disturbed.' Id. at
 193-94 (quoting Smith, supra, 72 N.J. at 358.)
 Moreover, a court should not rewrite a

 8 A-2097-15T2
 contract or grant a better deal than that for
 which the parties expressly bargained.
 Solondz v. Kornmehl, 317 N.J. Super. 16, 21-
 22, (App. Div. 1998).

 A settlement agreement is governed by
 basic contract principles. J.B. v. W.B., 215
 N.J. 305, 326, (2013) (citing Pacifico v.
 Pacifico, 190 N.J. 258, 265 (2007)). Among
 those principles are that courts should
 discern and implement the intentions of the
 parties. Pacifico, supra, 190 N.J. at 266
 (citing Tessmar v. Grosner, 23 N.J. 193, 201
 (1957)). It is not the function of the court
 to rewrite or revise an agreement when the
 intent of the parties is clear. J.B., supra,
 215 N.J. at 326, 73 (citing Miller v. Miller,
 160 N.J. 408, 419 (1999)). Stated
 differently, the parties cannot expect a court
 to present to them a contract better than or
 different from the agreement they struck
 between themselves. Kampf v. Franklin Life
 Ins. Co., 33 N.J. 36, 43. (1960) (citations
 omitted). Thus, when the intent of the
 parties is plain and the language is clear and
 unambiguous, a court must enforce the
 agreement as written, unless doing so would
 lead to an absurd result.

 [Quinn v. Quinn, 225 N.J. 34, 44-45 (2016).]

 Guided by these principles, we note that "[a]pplications for

relief from equitable distribution provisions contained in a

judgment of divorce and property settlement agreements are subject

to [Rule 4:50-1] and not, as in the case of alimony, support,

custody, and other matters of continuing jurisdiction of the court,

subject to a 'changed circumstances' standard." Pressler &

Verniero, Current N.J. Court Rules, comment 6.1 on R. 4:50-1 (2017)

 9 A-2097-15T2
(citing Miller v. Miller, 160 N.J. 408, 418 (1999)); see also

Harrington v. Harrington, 281 N.J. Super. 39, 48 (App. Div.),

certif. denied, 142 N.J. 455 (1995).

 Rule 4:50-1 (Rule) provides that relief may be obtained

 from a final judgment or order for the
 following reasons: (a) mistake, inadvertence,
 surprise, or excusable neglect; (b) newly
 discovered evidence which would probably alter
 the judgment or order and which by due
 diligence could not have been discovered in
 time to move for a new trial under R. 4:49;
 (c) fraud (whether heretofore denominated
 intrinsic or extrinsic), misrepresentation,
 or other misconduct of an adverse party; (d)
 the judgment or order is void; (e) the
 judgment or order has been satisfied, released
 or discharged, or a prior judgment or order
 upon which it is based has been reversed or
 otherwise vacated, or it is no longer
 equitable that the judgment or order should
 have prospective application; or (f) any other
 reason justifying relief from the operation
 of the judgment or order.

 In order to obtain relief under the Rule the party seeking

such relief is required to present proof "of exceptional and

compelling circumstances" justifying the relief sought because the

Rule is "[d]esigned to balance the interests of finality of

judgments and judicial efficiency against the interest of equity

and fairness." Harrington, supra, 281 N.J. Super. at 48 (citing

Baumann v. Marinaro, 95 N.J. 380, 392 (1984)). "[T]o establish

the right to such relief, it must be shown that enforcement of the

order or judgment would be unjust, oppressive or inequitable."

 10 A-2097-15T2
Ibid. (citations omitted). Relief under this Rule is granted

sparingly and a party is entitled to a hearing on the application

only upon a showing that there exists genuinely disputed issues

of material fact supporting the relief sought. Barrie v. Barrie,

154 N.J. Super. 301, 303-04 (App. Div. 1977), certif. denied, 75

N.J. 601 (1978).

 Moreover, not every factual dispute on a motion requires a

plenary hearing. A plenary hearing is only necessary to resolve

genuine issues of material fact in dispute. Eaton v. Grau, 368

N.J. Super. 215, 222 (App. Div. 2004); Harrington, supra, 281 N.J.

Super. at 47; Adler v. Adler, 229 N.J. Super. 496, 500 (App. Div.

1988). Genuinely disputed issues of fact are those having

substance as opposed to insignificance. Cokus v. Bristol Myers

Squibb Co., 362 N.J. Super. 366, 370 (Law Div. 2002), aff'd o.b.,

362 N.J. Super. 245, certif. denied, 178 N.J. 32 (2003). A trial

judge's decision whether to allow or deny such relief on one of

the six specified grounds in the Rule should be "left undisturbed

unless it results from a clear abuse of discretion." Pressler &

Verniero, supra, comment 1 on R. 4:50-1 (citing U.S. Bank Nat'l

Ass'n v. Guillaume, 209 N.J. 449, 467 (2012)).

 Here, there is absolutely no proof of mistake, newly

discovered evidence, fraud, overreaching, unconscionability, or

any other enumerated ground to warrant modification of the

 11 A-2097-15T2
equitable distribution provisions of the AFJOD. On the contrary,

at the time the settlement regarding the Burns and Roe retirement

provision was placed on the record and eventually incorporated

into the Amended Final Judgment of Divorce, both parties were

represented by counsel. Neither party raised any objection to this

specific provision, either on the day the settlement was placed

on the record, prior to the issuance of the AFJOD, or during the

five-day period the proposed AFJOD had been submitted to the court

pursuant to Rule 4:42-1(c). Indeed, under Rule 4:42-1(c), the

court, in its discretion could have listed the matter for a hearing

had an objection to the proposed judgment been raised by plaintiff

at that time.

 The record further reveals that prior to placing the

settlement on the record, the court cautioned both parties:

 I want you to listen carefully as counsel
 places the settlement on the record. You're
 going to be questioned as to whether you
 understand it, whether you agree to all the
 terms, OK? This is a settlement. Once you
 acknowledge that you understand it and you
 agree to it, there's no going back, OK? So, I
 just want to be clear that – [because] it seems
 like every time we make one step forward we
 take five steps back.

After defendant's counsel placed the terms of the settlement on

the record, the court questioned both parties regarding their

 12 A-2097-15T2
understanding of the agreement and willingness to be bound by the

terms articulated on the record.

 The following colloquy occurred, first between plaintiff and

his attorney, then between plaintiff and the court, and finally

between plaintiff and defendant's counsel:

 MR. COHEN: Plaintiff, you heard the terms
 of the settlement as they were placed on the
 record just now, by Ms. Crane. This settlement
 was based upon compromises that were made over
 the past several days, and possibly even
 earlier. Do you understand the terms of the
 agreement?

 PLAINTIFF: Yes, I do.

 MR. COHEN: Under all of the
 circumstances, do you find same to be
 reasonable and fair in order to end this
 divorce litigation on this date?

 PLAINTIFF: I don’t think it's fair, but
 I'll agree to it.

 THE COURT: Well, in the spirit of
 compromise and negotiation, recognizing you
 didn’t get everything you wanted, she didn’t
 get everything she wanted, but you
 compromised, you met in the middle or -- or
 part way in so that you could resolve this,
 and you wouldn’t have to go through the
 expense and the stress of a trial. Under those
 circumstances, do you think it’s fair and
 reasonable?

 PLAINTIFF: Yes.

 . . . .

 13 A-2097-15T2
 THE COURT: Anybody force or make you sign
 it -- well, anybody make -- force or make you
 enter into this agreement against your will?

 PLAINTIFF: No.

 THE COURT: Okay. Anybody promise you
 anything other than what’s been placed on the
 record today?

 PLAINTIFF: No.

 THE COURT: Have you had enough time to
 review this agreement and discuss it with your
 attorney?

 PLAINTIFF: Yes.

 . . . .

 MS. CRANE: Plaintiff, you understand that
 you can’t come back and say, oh, I forgot this
 and you didn’t handle this and we didn’t do
 that –

 PLAINTIFF: I agree.

 MS. CRANE: -- this is the -- what I placed
 on the record is the entire agreement. All
 other claims or charges are waived.

 PLAINTIFF: Right.

 Additionally, it is undisputed that the Burns and Roe account

was acquired during the marriage and therefore deemed a marital

asset. As the court noted in the statement of reasons:

 . . . the account was not divided at [the
 time the divorce complaint was filed] and
 still has not been divided. Thus each parties'
 $111,000 share has been accruing investment
 experience while both shares are still in one
 account in plaintiff's name. Defendant is

 14 A-2097-15T2
 entitled to the investment experience earned
 on her share while it is being held in
 plaintiff's account. If defendant's share had
 been earning investment experience in an
 account separate from plaintiff's share,
 plaintiff would not have a claim to that
 investment experience. Plaintiff cannot reap
 the rewards of defendant's share being
 invested in his name.

 Moreover, as highlighted by the court during the January 8,

2016 hearing, the Burns and Roe account was described on October

8, 2014, as having an "approximate value of $222,000," because

at the time of the settlement was placed on the record, plaintiff

had yet to provide any documentation associated with the account,

notwithstanding that the parties were in trial.

 Turning to plaintiff's claim of newly discovered evidence,

the court properly found that Troyan's requirement for a new

Amended Judgment of Divorce was not, as plaintiff urged, proof

that the settlement terms had changed. Rather, the court correctly

found that once Troyan discovered that plaintiff's Burns and Roe

account had been terminated and rolled over into Vanguard, the

judgment needed to be amended to reflect the account's new name.

Thus, while the name associated with the funds changed, the terms

of the settlement remained consistent. Therefore, plaintiff's

claim of newly discovered evidence lacks merit.

 However, assuming plaintiff's claim of newly discovered

evidence as a basis for relief from judgment had any facial merit,

 15 A-2097-15T2
in order to obtain such relief, the party seeking the relief must

demonstrate "that the evidence would probably have changed the

result, that it was unobtainable by the exercise of due diligence

for use at the trial, and that the evidence was not merely

cumulative." Quick Chek Food Stores v. Twp. of Springfield, 83

N.J. 438, 445 (1980) (citing State v. Speare, 86 N.J. Super. 565,

581-82 (App. Div.), certif. denied, 45 N.J. 589 (1965)). All

three requirements must be met. See ibid. Here, this information

was only "new" because plaintiff failed to produce any

documentation regarding the Burns and Roe account, or at the very

least notify defendant that the account had been rolled over into

a different IRA. Plaintiff failed to do so prior to trial, while

the settlement was being placed on the record during the trial or

after the trial.

 To summarize, substantial, credible, and undisputed evidence

in the record demonstrates that plaintiff's amended cross-motion

failed to meet the standards for relief from judgment under the

Rule. Moreover, the record demonstrates plaintiff's understanding

of the terms of the settlement and his knowing and voluntary assent

to its terms. Under such circumstances, a plenary hearing was not

necessary to ascertain the intent of the parties. In short, we

discern no basis on this record from which we may conclude the

 16 A-2097-15T2
court abused its discretion in denying the relief sought by

plaintiff.

 III.

 Finally, plaintiff contends the court improperly awarded

attorney's fees to defendant after it denied his cross-motion.

The court awarded defendant $2,527.50 in counsel fees, which

included the court's consideration of defense counsel's time

expended in preparing and addressing the motions as well as the

oral arguments conducted on the two post-judgment motions.

 We review a trial court's award of fees again under an abuse

of discretion standard, Yueh v. Yueh, 329 N.J. Super. 447, 466

(App. Div. 2000) (citation omitted), and such an award will be

disturbed "only on the 'rarest occasion[.]'" Strahan v. Strahan,

402 N.J. Super. 298, 317 (App. Div. 2008) (quoting Rendine v.

Pantzer, 141 N.J. 292, 317 (1995)). In Yueh, supra, the court

held conduct that increases litigation costs through

recalcitrance, defiance of court orders or misrepresentation will

support an award of attorney's fees. 329 N.J. Super. at 459-60.

 Here, while the court failed to express its findings in the

January 8, 2016 Statement of Reasons appended to its order, the

record clearly and convincingly demonstrates that the counsel fee

awarded to defendant was the direct result of plaintiff's

noncompliance with previously entered orders.

 17 A-2097-15T2
 Plaintiff failed to notify defendant or the court that as of

June 27, 2014, his Burns and Roe account no longer existed under

that name. In fact, on the day the settlement agreement was placed

on the record, the account had not been in existence for

approximately two months. Yet, plaintiff allowed the settlement

to be placed on the record with specific reference to the account

in detailing the terms of the settlement, without alerting the

court that the account no longer existed.

 After the settlement was placed on the record and knowing

that a pension expert would be preparing a QDRO, plaintiff still

failed to apprise defendant, defendant's attorney or Troyan of the

termination of the Burns and Roe account and its direct rollover

into the Vanguard account. Once Troyan discovered that the Burns

and Roe account no longer existed, it requested specific

documentation and information about the status of the funds.

Plaintiff failed to respond to this request. This ultimately

generated significant additional work not only for defendant's

counsel, but also for Troyan. The court noted in its November

6, 2015 order, that plaintiff had yet to provide the documents

required by Troyan.

 Irrespective of the merits of plaintiff's claims in his cross-

motion, the pension expert was going to need all of the requested

documentation. Thus, no reasonable argument could have been

 18 A-2097-15T2
advanced justifying plaintiff's ongoing failure to provide the

requisite documents to Troyan. Consequently, the award of counsel

fees here was not so wide of the mark that we can conclude the

court mistakenly exercised its discretion in rendering the award.

 Finally, given our conclusion that the court properly denied

plaintiff's request for a relief from judgment and for a plenary

hearing, there is no basis for this court to consider plaintiff's

final argument that we exercise original jurisdiction to resolve

the pension distribution issue.

 Affirmed.

 19 A-2097-15T2