**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3494-19

M.W.,

    Plaintiff–Respondent,

v.

C.W.,

    Defendant-Appellant.

_____

Submitted March 3, 2021 – Decided April 1, 2021

Before Judges Whipple and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-0735-19.

Howard D. Lipstein, attorney for appellant.

Lawrence Law Firm, LLC, attorneys for respondent (Jeralyn L. Lawrence and Kristyl M. Berckes, on the brief).

PER CURIAM

In this post-judgment dissolution matter, defendant C.W.[1] appeals from the Family Part's April 17, 2020 order denying his motion to vacate the final judgment of divorce (FJOD) under Rule 4:50-1. We affirm.

I.

We discern the following facts and procedural history from the record on appeal. The parties were married in 1996 and have two children, J.W., born in 2001, and R.W., born in 2003, who is autistic. C.W. is fifty-seven years old and is employed as a math teacher by the Elizabeth Board of Education earning a base salary of $67,000. He was diagnosed with epilepsy in 2013 and is prescribed Lamotrigine daily to prevent epileptic episodes. Plaintiff, who is also fifty-seven years old, is employed by Serta Simmons Bedding, LLC, earned a base salary of $80,344.08 in 2018, and received a $13,855.62 bonus. Both parties have rental income, defendant receiving approximately three times more than plaintiff.

In September 2018, plaintiff first raised the possibility of a divorce with defendant. On October 4, 2018, defendant suffered a seizure while driving and rear-ended a vehicle operated by an undercover police officer. Fearing defendant would be involved in another accident, he alleged plaintiff demanded

---

[1] We use initials to protect the parties' privacy interests. See R. 1:38-3(d)(1).

a turnover of all marital assets into her sole name; otherwise, she would contact the New Jersey Motor Vehicle Commission and have his driver's license suspended. Plaintiff sought a divorce as a result of defendant's unstable lifestyle of constant employment changes and relocating the family.

After speaking with a mutual friend who is a wealth management accountant, the parties agreed to retain a mediator and shared the costs of his services. At defendant's request, a spreadsheet was jointly prepared of the parties' assets for equitable distribution purposes and forwarded to the mediator. The parties were self-represented at mediation. The mediator prepared a marital settlement agreement through mediation (MSA), which was signed by both parties and notarized on November 10, 2018.

Of significance in the MSA is the distribution of three properties the parties owned as tenants by the entirety. Plaintiff retained sole title of the former marital home and the existing mortgage encumbering the property was evenly divided. Defendant received unencumbered title to the parties' Poconos property and a rental property in Cranford. Child support was waived, but each party agreed to contribute $200 monthly towards clothes, activities, and necessities for the children. Given the ages of the children, neither party was designated as the parent of primary residence. Both parties waived alimony.

A-3494-19

On November 13, 2018, plaintiff filed a complaint for divorce as a self-represented litigant and defendant assisted her with drafting the pleading, providing insurance-related details. An uncontested hearing date was moved up at defendant's request from February 4, 2019, to January 16, 2019, to alleviate stress for the family.

On January 9, 2019, defendant had another epileptic episode resulting in a seizure while he was driving. His vehicle was totaled after striking a guardrail, and he was transported to the hospital where he was treated and discharged. Plaintiff drove defendant to the January 16, 2019 hearing because the parties were still residing together at that time and due to his history of accidents arising from epileptic episodes. Defendant now claims he thought he was going to an Individualized Education Program for their son R.W. when the parties left the home that morning, and he was unprepared for the hearing.

At the hearing, which was scheduled as a default hearing in light of the executed MSA, and defendant not filing a responsive pleading, both parties appeared as self-represented litigants. After administering the oath to both parties, the judge conducted voir dire of the parties as to their familiarity with, understanding of, voluntariness, and agreement to the terms set forth in the MSA

A-3494-19

marked as J-1 in evidence. The following colloquy took place between the judge and defendant:

> Judge: All right. Sir, same thing. You also recognize J-1?
>
> Defendant: Yes.
>
> Judge: And did you sign it?
>
> Defendant: Yes, I did.
>
> Judge: And are you comfortable you understand it?
>
> Defendant: Now is there any chance to change that or anything?
>
> Judge: To change this document?
>
> Defendant: Or it's -- it's written in stone, right? We're done?
>
> Judge: Well, it's written stone if I approve it: That's what we're trying to find out now.
>
> Defendant: Okay.
>
> Judge: If you -- you had enough time to think about it, if you think it's fair?
>
> Defendant: It's an even equity distribution.
>
> Judge: Okay. And so it's okay with you if I make it a part of your judgment of divorce?
>
> Defendant: Yeah.

5

Judge: Okay.

The judge was satisfied from the parties' testimony that the MSA "represents a settlement of all the issues in the marriage and they're willing to be bound by it." The record shows the judge exchanged pleasantries with the parties about his father, who was also a judge, which defendant acknowledged. The FJOD was executed by the judge that day and incorporated the MSA.

Thereafter, on August 26, 2019, defendant filed a motion to vacate the FJOD and to set aside the MSA under Rule 4:50-1. In his moving certification, defendant claimed his medical condition, which resulted in epileptic seizures, and the medications he took, prevented him from understanding the terms of the MSA and the nature of the divorce proceeding. Plaintiff opposed defendant's motion and filed a cross-motion to enforce her rights under the MSA.

On October 11, 2019, the same judge heard oral argument on the motions. In his oral opinion, the judge noted he presided over the divorce hearing and that he reviewed the hearing transcript when he received the motion and the day prior to oral argument. The judge explicitly found, "there was nothing about [defendant's] countenance, his appearance, his affect, or the way he presented himself that day that suggested to me anything other than he was here with us, understood what he was doing, understood what he was saying." Consequently,

the judge denied defendant's motion to vacate the FJOD and granted plaintiff's cross-motion, enforcing defendant's obligations pursuant to the MSA, and ordering him to pay $9,647.50 towards plaintiff's counsel fees.

On January 15, 2020, after retaining new counsel, defendant filed a second motion to vacate the FJOD. In his moving certification, defendant, for the first time, raised the point that he was an alcoholic. In support of this contention, defendant submitted a report from Dr. David J. Gallina, a board-certified psychiatrist and neurologist, who interviewed defendant and concluded, based on his history, he "was under the influence of alcohol at the time of the divorce hearing." Plaintiff again opposed defendant's motion.

On February 28, 2020, the same judge denied defendant's motion, without conducting oral argument, and placed his decision on the record. The judge stated defendant's motion was "overwhelmingly similar" to his prior motion, aside from the brand-new allegation of alcoholism, which the judge determined was incredulous. Once again, the judge awarded plaintiff attorney's fees in the amount of $7701, finding defendant was clearly an active and willing participant in the preparation of the "eventual agreement" leading to the MSA as well as the final hearing. In addition, the judge reiterated he "had the opportunity to observe [defendant]. If I felt there was anything about his appearance that suggest[ed]

to the [c]ourt he was under the influence of anything I certainly [would] have inquired him about that." A memorializing order was entered.

On March 18, 2020, defendant filed a motion for reconsideration, which was opposed by plaintiff. No oral argument was entertained. In his oral decision, the judge denied defendant's motion and emphasized, "there's nothing new here," and "this is literally the fourth bite at the apple." The judge awarded plaintiff attorney's fees of $6,236.50 and entered a memorializing order. This appeal followed.

On appeal, defendant argues that the judge erred in denying his motion to vacate the FJOD by "failing to ensure [he] knowingly, willingly and voluntarily entered into the [MSA]" before incorporating the MSA into the FJOD. Defendant also alleges his subsequent motion to vacate was improperly denied without the judge hearing oral argument.

II.

New Jersey has long espoused a policy favoring the use of consensual agreements to resolve controversies, and "[s]ettlement of disputes, including matrimonial disputes, is encouraged and highly valued in our system." Quinn v. Quinn, 225 N.J. 34, 44 (2016). "An agreement that resolves a matrimonial dispute is no less a contract than an agreement to resolve a business dispute[,]"

and "is governed by basic contract principles." Id. at 45. "Among those principles are that courts should discern and implement the intentions of the parties[,]" and not "rewrite or revise an agreement when the intent of the parties is clear." Ibid. "Thus, when the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Ibid. However, "[t]o the extent that there is any ambiguity in the expression of the terms of a settlement agreement, a hearing may be necessary to discern the intent of the parties at the time the agreement was entered and to implement that intent." Ibid.

A settlement agreement must be set aside when one party was not competent to voluntarily consent to it. Jennings v. Reed, 381 N.J. Super. 217, 227 (App. Div. 2005). "[T]he longstanding rule is that 'where there is not the mental capacity to comprehend and understand, there is not the capacity to make a valid contract.'" Ibid. (quoting Wolkoff v. Villane, 288 N.J. Super. 282, 287 (App. Div. 1996)); see also Peskin v. Peskin, 271 N.J. Super. 261, 278 (App. Div. 1994). A party to a contract possesses the requisite capacity when the party has "the ability to understand the nature and effect of the act in which he is engaged, and the business he is transacting . . . [the party's mind must not] be so clouded or perverted by age, disease, or affliction, that he cannot comprehend

the business in which he is engaging . . . ." Jennings, 381 N.J. Super. at 227 (quoting Eaton v. Eaton, N.J.L. 108, 113 (Sup. Ct. 1874)).  The party seeking to set aside a settlement agreement generally has the burden of proving his incapacity or incompetence to contract.  Ibid.

We have had prior occasions to review a trial judge's decision on a motion to vacate an agreement or order based upon incapacity.  Those cases turned on the evidence of incapacity at the time of the agreement rather than when the motion was made.  See e.g., Barrie v. Barrie, 154 N.J. Super. 301, 305-06 (App. Div. 1977) (affirming the denial of the plaintiff-wife's motion to either vacate her property settlement agreement under Rule 4:50-1(f) or grant a plenary hearing as to whether the court should rescind the agreement where she included a certification from her psychiatrist that did not address her capacity at the time she entered into an agreement); Fineberg v. Fineberg, 309 N.J. Super. 205, 215-17 (App. Div. 1998) (affirming trial judge's denial of defendant-husband's motion to set aside a divorce judgment on the grounds that he was hospitalized and did not receive notice of the trial date, because he had previously opposed the wife's motion to appoint a guardian ad litem for him by arguing that he was competent).

A-3494-19

Here, the motion judge rejected defendant's factual assertions that he claimed supported a finding that he lacked capacity. The judge did not specifically mention Dr. Gallina's report in his decision; however, we discern no error or abuse of discretion.

The record shows Dr. Gallina had no prior history of treating defendant, and the doctor's forensic report was premised almost exclusively on an interview he conducted of defendant nearly a year after the FJOD was entered. Moreover, Dr. Gallina's conclusions rested largely on the self-serving representations made by defendant, which were subjective in nature, and not based on objective, credible evidence. Under Rule 702,[2] Dr. Gallina's report lacked the "differential diagnostic methodology" required to ensure admissibility based upon objective factors. Creanga v. Jardal, 185 N.J. 345, 357 (2005). And, his report was served out of time in violation of Rule 1:6-2.

"'[T]he decision whether to vacate a judgment on one of the six specified grounds [of Rule 4:50-1] is a determination left to the sound discretion of the trial court, guided by principles of equity' and that decision must be left

---

[2] Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise."

A-3494-19

undisturbed unless a clear abuse of discretion appears."  Del Vecchio v. Hemberger, 388 N.J. Super. 179, 186-87 (App. Div. 2006) (quoting F.B. v. A.L.G., 176 N.J. 201, 207 (2003)).  A determination on a motion for relief under Rule 4:50-1 "warrants substantial deference, and should not be reversed unless it results in a clear abuse of discretion."  U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012).  An abuse of discretion will be found "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  Ibid. (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)).

Rule 4:50-1(f) states in pertinent part that relief may be obtained "[o]n motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for any other reason justifying relief from the operation of the judgment or order."

In order to obtain relief under the Rule the party seeking such relief is required to present proof "of exceptional and compelling circumstances" justifying the relief sought because the Rule is "[d]esigned to balance the interests of finality of judgments and judicial efficiency against the interest of equity and fairness."  Harrington v. Harrington, 281 N.J. Super. 39, 48 (App. Div. 1995) (citing Baumann v. Marinaro, 95 N.J. 380, 392 (1984)).  "[T]o

establish the right to such relief, it must be shown that enforcement of the order or judgment would be unjust, oppressive or inequitable." Ibid. (citations omitted). Relief under this Rule is granted sparingly, and a party is entitled to a hearing on the application only upon a showing that there exists genuinely disputed issues of material fact supporting the relief sought. Barrie, 154 N.J. Super. at 303-04.

Moreover, not every factual dispute on a motion requires a plenary hearing. A plenary hearing is only necessary to resolve genuine issues of material fact in dispute. Eaton v. Grau, 368 N.J. Super. 215, 222 (App. Div. 2004); Harrington, 281 N.J. Super. at 47; Adler v. Adler, 229 N.J. Super. 496, 500 (App. Div. 1988). Genuinely disputed issues of fact are those having substance as opposed to insignificance. Cokus v. Bristol Myers Squibb Co., 362 N.J. Super. 366, 370 (Law Div. 2002), aff'd o.b., 362 N.J. Super. 245 (App. Div. 2003).

A trial judge's decision whether to allow or deny such relief under the Rule should be "left undisturbed unless it results from a clear abuse of discretion." Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:50-1 (2021) (citing Guillaume, 209 N.J. at 467).

Here, there is absolutely no proof that defendant did not participate knowingly, willingly, and voluntarily in the final divorce hearing. On the contrary, at the final hearing, the parties made a handwritten change to their MSA—one that was beneficial to defendant—allowing him to remove himself and his personal belongings from the marital home on March 1 instead of January 1, 2020. The judge questioned defendant about his understanding of the MSA and the parties' agreement to extend his stay in the marital home, to which defendant responded affirmatively. The record further reveals the judge questioned both parties regarding their willingness to be bound by the terms of the MSA on the record.

Defendant ostensibly told Dr. Gallina that "[t]he night before [the hearing] he thinks he drank about [thirteen] ounces of bourbon, and he drank about [six] ounces of bourbon on the morning of the hearing." To reiterate, the judge listened to the testimony not only upon receiving the motion to vacate, but again the day before oral argument and stressed:

> And so I can't accept the representation that he was somehow incompetent on the day that he was in court. I also say, all I have is I—as I mentioned already—is a certification and printout of some medication.
>
> I don't have anything from any kind of a medical provider suggesting that either at the time he negotiated

14

the [MSA], or on the day he was in court, that he was not in possession of his faculties.

. . . .

I will say also, I don't have anything from [the mediator] saying that he had any concerns whatsoever with [defendant] at the time [the] agreement was not[ariz]ed (sic) . . . .

I think, with all due respect, there's an absolute posit of information that would have supported [defendant's] position here for setting aside the default judgment.

. . . His certification and a printout of some medication is a long way from anything that would have provided this [c]ourt from any ability to buy into his argument, which I do not, that he was somehow not in a proper capacity to be able to make the decisions he made and it's belied by the agreement.

It's belied by the fact that it was reached with a mediator, who was an attorney. It was belied by his appearance in the court that day and the answers that he gave the court.

In family matters "'substantial weight' must be given to the judge's observations of the parties' 'demeanor, comprehension and speech' when they appeared before the court . . . ." Rolnick v. Rolnick, 262 N.J. Super. 343, 360 (App. Div. 1993) (quoting Barrie, 154 N.J. Super. at 307.) "Because of the importance that [the courts] attach to the finality of judgment, relief under Rule 4:50-1(f) is available only when 'truly exceptional circumstances are present.'"

<u>Hous. Auth. v. Little</u>, 135 N.J. 274, 286 (1994) (quoting <u>Baumann</u>, 95 N.J. at 395).

To summarize, substantial, credible, and undisputed evidence in the record demonstrates that defendant's motion to vacate failed to meet the standards for relief from judgment under <u>Rule</u> 4:50-1(f). Moreover, the record demonstrates defendant's understanding of the terms of the settlement and his knowing and voluntary assent to its terms. Under such circumstances, a plenary hearing was not necessary to ascertain the intent of the parties. In short, we discern no basis on this record to conclude the judge abused his discretion in denying the relief sought by defendant.

III.

Finally, defendant contends the judge committed error when he denied defendant's second motion to vacate and for reconsideration without conducting oral argument. We acknowledge that litigants should be permitted oral argument of motions other than calendar matters and routine discovery applications when requested "as a matter both of due process and the appearance of due process." <u>Filippone v. Lee</u>, 304 N.J. Super. 301, 306 (App. Div. 1997); <u>see also</u> Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 1.1 on <u>R.</u> 5:5-4

16                                                          <span>A-3494-19</span>

(2021) ("[T]here is a strong presumption favoring argument of motions other than calendar matters and routine discovery applications.").

To that end, Rule 5:5-4(a) expressly provides:

> Motions in family actions shall be governed by [Rule] 1:6-2(b) except that, in exercising its discretion as to the mode and scheduling of disposition of motions, the court, shall ordinarily grant requests for oral argument on substantive and non-routine discovery motions and ordinarily deny requests for oral argument on calendar and routine discovery motions.

"The discretion afforded by Rule 5:5-4(a) is designed to give the judge 'the option of dispensing with oral argument . . . when no evidence beyond the motion papers themselves and whatever else is already in the record is necessary to a decision.'" Palombi v. Palombi, 414 N.J. Super. 274, 285 (App. Div. 2010) (alteration in original) (quoting Fusco v. Fusco, 186 N.J. Super. 321, 328-29 (App. Div. 1982)). "In short, it is the sole purpose of these rules to dispense with what is regarded as unnecessary or unproductive advocacy." Ibid. (quoting Fusco, 186 N.J. Super. at 329).

However, a judge's inquiry does not end simply because the "nature of an issue presented can be labeled as pertaining to a substantive issue" or when "the parties do not agree on all facts." Id. at 286. "Other circumstances, such as the sufficiency of the supporting facts alleged are also relevant to the exercise of

17

discretion," especially "in the case of motions that seek a modification of financial obligations or reconsideration or a prior order because the movant must satisfy certain requirements before these motions are ripe for decision by the court." Ibid. "When the record presented to the court in support of a motion is deficient on its face to satisfy such requirement, oral argument does not afford litigants an opportunity to cure such evidentiary deficiencies." Ibid.

In accordance with Palombi, we conclude the judge properly exercised his discretion in denying oral argument. It is clear from the judge's October 11, 2019, February 28, 2020, and April 17, 2020 oral decisions that he was familiar with the issues raised in defendant's motions, having conducted the final hearing. Moreover, the judge aptly highlighted that defendant's repetitious motions were "becoming an abuse of process." In his April 17, 2020 oral decision, the judge held "it became clear" that defendant offered nothing new "other than he keeps changing his argument. At one point it was that he was too much of an alcoholic. Another point was that he was epileptic." The judge was convinced the MSA was "an arm's length transaction."

Under these circumstances, oral argument would have been nothing more than "unnecessary or unproductive advocacy." See Palombi, 414 N.J. Super. at 285 (quoting Fusco, 186 N.J. Super. at 329). Further, defendant's application

18                                                                          A-3494-19

failed to comply with Rule 4:49-2 as it did not set forth "a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred . . . ." Rather, the application was an improper attempt to reargue matters resolved by the judge's prior decisions and orders.

Reconsideration is a matter within the sound discretion of the trial court, which we review for abuse of discretion. See Palombi, 414 N.J. Super. at 288-89. "Motions for reconsideration are granted only under very narrow circumstances . . . ." Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002). As such, reconsideration should be used only for those cases where "either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Ibid. (quoting D'Atria v. D'Atria 242 N.J. Super. 392, 401 (Ch. Div. 1990)); see R. 4:49-2.

Based upon our review of the record, it is clear that the motion judge did not base his decision upon a palpably incorrect or irrational basis, or fail to consider probative, competent evidence. The judge's decision was grounded in his first-hand observations of the parties at the final hearing and produced a just result. Accordingly, we conclude defendant failed to demonstrate the judge

abused his discretion in denying oral argument and in denying defendant's motion for reconsideration.

To the extent we have not specifically addressed any of defendant's remaining contentions, it is because we find they have insufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION