268 N.J. Super. 417 (1993)
633 A.2d 1024
LINA CASTRIOTA, PLAINTIFF-APPELLANT,
v.
LUIGI CASTRIOTA, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 25, 1993.
Decided December 1, 1993.
*419 Before Judges PETRELLA, BAIME and CONLEY.
Gulkin & Beinhaker, attorneys for appellant (Kenneth E. Bellani, on the brief).
Roy E. Kurnos, attorney for respondent (Mr. Kurnos, on the brief).
The opinion of the court was delivered by BAIME, J.A.D.
This is an appeal from an order denying plaintiff's motion to compel defendant to turn over certain stock certificates for the purpose of an execution sale. At issue is whether a judgment creditor may execute upon the judgment debtor's shares of stock in a closely held corporation where such securities are subject to an absolute prohibition against their alienation. We hold that the unqualified restraint on the transfer of the securities is unreasonable and contravenes public policy. To protect the rights of the surviving shareholder, we afford the corporation a reasonable opportunity to acquire the restricted securities at fair market value. Whether or not this option is exercised, the proceeds of any sale are subject to whatever priorities exist among the creditors of the judgment debtor.

I.
The salient facts are not in dispute. Plaintiff and defendant were divorced in 1988. The judgment incorporated a property settlement agreement which required defendant to pay $200,000 in scheduled installments for the purpose of equitable distribution. Defendant retained exclusive ownership of his shares of stock in the Italian Chalet, Inc. and the II Villagio, Inc., two closely held corporations in the business of operating two restaurants.
*420 In 1976, defendant and his business partner, Frank Reda, pledged the shares of the Italian Chalet, Inc. as collateral in an unrelated business transaction involving the purchase of a restaurant. Under the agreement, the pledged stock could not be sold, hypothecated or otherwise transferred without the consent of the seller. The record does not disclose whether the purchase price was ultimately paid and whether the securities remain encumbered by the terms of the 1976 agreement. For reasons which will be described later in our opinion, we need not presently concern ourselves with the impact of this agreement and the alienation restriction on the securities. Suffice it to say at this point that defendant does not rely upon the escrow agreement in this appeal and, in any event, whatever disposition is to be made of the securities must protect the rights of prior creditors.
Instead, our attention is focused upon a shareholders agreement entered into between defendant and Reda in 1989. The articulated objective of this agreement was to insure "continuity of management" in the event of the death or disability of one of the shareholders and to preserve and protect the "intimate[]" working relationship they had forged over the years. The agreement provided for an insurance funded "buyout" in the event of the death of either of the shareholders. In addition, the agreement purported to prohibit all lifetime transfers of the stock in the Italian Chalet, Inc. and the II Villagio, Inc. Because of the importance of this paragraph to the issue presented, we quote it verbatim:
The parties acknowledge and agree that each are intimately involved in the conduct of the business and affairs of the entities described in paragraph 1 of this Agreement. Specifically they acknowledge that they do not want to upset the workings of the entities described in paragraph 1 and therefore prohibit the issuance of stock to their children, spouses, of [sic] any other third party. Therefore, in the event of a divorce, levy, bankruptcy or insolvency, their interest in the entities described in paragraph 1 shall be evaluated by Harvey Shoner of Baker & Shoner, Boonton, New Jersey. The valuation of the stock of the insolvent partner shall be binding on him and his creditors. The valuation shall be reduced to a Note given by the corporation to the creditor of the insolvent partner. The note shall be subordinated to all secured obligations of the entities described in paragraph 1, trade payables and shareholders loans. The Note shall be without *421 interest and shall be due and payable if, as and when the remaining partner shall sell his interest in the entities described in paragraph 1.
Sometime thereafter, defendant defaulted in making payments under the equitable distribution provisions of the property settlement agreement. On August 28, 1989, plaintiff obtained a judgment against defendant in the amount of $184,800. When plaintiff commenced proceedings to collect on the judgment, a settlement between the parties was reached. In return for a payment of $40,000, plaintiff agreed to refrain from taking further steps against defendant for a period of six months.
Following the six month period, plaintiff resumed her efforts to obtain payment of the balance due. After receiving no response from the defendant, plaintiff obtained a writ of execution commanding the Morris County Sheriff to levy upon his personal property. When the sheriff levied upon defendant's interest in his stock in the Italian Chalet, Inc. and the II Villagio, Inc., plaintiff filed a motion to compel a "turnover" of the named stock certificates. In his opposing papers, defendant argued that it would be inequitable to require him to divest himself of the principal asset that had been distributed to him pursuant to the property settlement agreement. He also asserted that his shares were encumbered by the 1976 escrow agreement and the subsequent restrictions on alienation of the stock imposed under the 1989 shareholders agreement. Although the matter was extensively argued, the Family Part judge reserved decision and subsequently entered an order denying plaintiff's motion without any articulation of his reasons, contrary to the requirements of R. 1:6-2(f). Rather than cause additional delay, we decide the issues presented for the reason of judicial economy. Because the Family Part failed to articulate its reasons, we are obliged to examine both grounds urged by defendant in support of the order entered.

II.
Initially, we find no merit in defendant's argument that the Family Part properly exercised its discretion in refusing to *422 enforce the terms of the divorce judgment, assuming that was the judge's rationale in denying plaintiff's motion. We acknowledge that the Family Part is not obliged to blind itself from fundamental fairness in resolving issues raised by a motion in aid of litigant's rights under R. 1:10-5. See Roselin v. Roselin, 208 N.J. Super. 612, 616, 506 A.2d 789 (App.Div. 1986). This much conceded, equitable distribution agreements, unlike alimony and support obligations, are not subject to modification by reason of changed circumstances. Mahoney v. Mahoney, 91 N.J. 488, 498, 453 A.2d 527 (1982); Schwartzman v. Schwartzman, 248 N.J. Super. 73, 77, 590 A.2d 246 (App.Div.), certif. denied, 126 N.J. 341, 598 A.2d 897 (1991); Monte v. Monte, 212 N.J. Super. 557, 561, 515 A.2d 1233 (App.Div. 1986). Although there may be exceptions to this rule, such as where equitable distribution is a disguise for alimony, see Connor v. Connor, 254 N.J. Super. 591, 602, 604 A.2d 158 (App.Div. 1992), the record is barren of anything requiring deviation from normal practice. We perceive no reason why the property settlement agreement should not be enforced according to its letter. The Family Part implicitly agreed with this sentiment earlier in this litigation when it entered judgment upon the defendant's default. At this stage, it is far too late in the proceedings to suggest that the court somehow abused its discretion when it entered judgment against defendant pursuant to plaintiff's application. If the Family Part's denial of plaintiff's motion for a "turnover" order was in fact predicated upon its consideration of equitable principles, we find an abuse of the court's discretionary powers.

III.
In any event, we view this appeal as presenting questions relating to corporate law and creditor's rights. More specifically, the issue raised is whether the owners of stock in a closely held corporation may shelter their shares from the claims of a judgment creditor by entering into a shareholders agreement containing an absolute prohibition against alienation. We have italicized *423 the word "absolute" because we deem the issuance of a non-interest bearing note payable at the whim of a surviving shareholder to be an insufficient palliative to cure what is otherwise a void restraint upon alienation.
The validity of stock transfer restrictions has long been a source of confusion. Historically, restraints upon alienation were disfavored by the courts. 12 William M. Fletcher, Fletcher Cyclopedia of the Law of Corporations § 5461.3 (perm. ed. rev. vol. 1985). Reluctance to enforce such restrictions was premised on the theory that a share of stock is a property right and that a restraint against transfer is antithetical to the freedom of the market place. Ibid. The widespread use of stock transfer restrictions in closely held corporations has required a reappraisal of this judicial policy. In more recent times, the courts have recognized that stock in a small corporation is not merely property, that it also creates a personal relation analogous to a partnership and that the owners have reason to prevent unacceptable outsiders from acquiring an interest in the entity. Donahue v. Rodd Electrotype Co., 367 Mass. 578, 328 N.E.2d 505, 512 (1975); cf. Bostock v. High Tech Elevator Indus., Inc., 260 N.J. Super. 432, 444, 616 A.2d 1314 (App.Div. 1992). Today, reasonable stock transfer restrictions have been held valid in most jurisdictions. Hill v. Warner, Berman & Spitz, P.A., 197 N.J. Super. 152, 165, 484 A.2d 344 (App.Div. 1984); 12 Fletcher § 5461.3. This trend is reflected in our statutes. Although shares of stock constitute personal property subject to negotiation under the Uniform Commercial Code, see N.J.S.A. 12A:8-105, the New Jersey Business Corporation Act (N.J.S.A. 14A:1-1 to:16-4) provides that "[a]ny reasonable restriction on the transfer ... of shares ... may be enforced against the holder ... and any successor or transferee." N.J.S.A. 14A:7-12(2). Apart from this general provision, the statute specifically authorizes enforcement of restrictions allowing the corporation or a shareholder to exercise a right of first refusal, N.J.S.A. 14A:7-12(3)(a), obligating the corporation or a shareholder to acquire the restricted securities, N.J.S.A. 14A:7-12(3)(b), requiring the corporation or the holders of shares to consent to or *424 approve of a proposed transfer, N.J.S.A. 14A:7-12(3)(c), or prohibiting the transfer to designated persons or classes if not manifestly unreasonable, N.J.S.A. 14A:7-12(3)(d). The Legislature's sanction of first-option arrangements, buy-sell agreements, consent restraints, and reasonable prohibitions against transfer of shares to designated persons or classes comports with the statutes of other states. See Report of the Corporate Law Commission, Comment to N.J.S.A. 14A:7-12 (1968); 12 Fletcher § 5461.2. We are obliged to apply the statute in a manner consonant with its essential purpose to permit reasonable restrictions upon alienation.
Against this statutory backdrop, we nevertheless conclude that the restraint against alienation contained in the 1989 shareholders agreement is unreasonable and against public policy. The prohibition against transfer of the shares does not fall within the purview of the enumerated restrictions specifically sanctioned under N.J.S.A. 14A:7-12(3)(a)(b)(c) and (d). Specifically, the shareholder agreement does not provide a first refusal option to the corporation or stockholders. Nor does it require the corporation or the shareholders to purchase restricted shares, or consent to a proposed transfer. While the agreement purports to prohibit inter vivos transfers of shares to designated persons or classes, i.e., the shareholders' "children, spouses, or any other third party," the restraint against alienation is total and absolute and, thus, void as against public policy. See Hill v. Warner, Berman & Spitz, P.A., 197 N.J. Super. at 164-65, 484 A.2d 344; Prindiville v. Johnson & Higgins, 92 N.J. Eq. 515, 113 A. 915 (Ch. 1921), aff'd, 93 N.J. Eq. 425, 116 A. 785 (E. & A. 1922); O'Neal, Close Corporations § 7.06 (1971); cf. Morris v. Hussong Dyeing Machine Co., 81 N.J. Eq. 256, 260-61, 86 A. 1026 (Ch. 1913).
As we noted earlier, the restraint against alienation is no less total and absolute because it requires the corporation to issue a note representing the value of the shareholder's interest in the event of "divorce, levy, bankruptcy or insolvency." Our research discloses no reported New Jersey opinion dealing with the precise *425 issue of whether a prohibition against alienation bars third party creditors from executing upon restricted securities. However, the issue has been raised in a variety of factual settings in other jurisdictions. The great weight of authority exempts forced transfers from the reach of such agreements. See, e.g., Street v. Sugerman, 202 So.2d 749 (Fla. 1967); Messersmith v. Messersmith, 229 La. 495, 86 So.2d 169, 172-73 (1956); Durkee v. Durkee-Mower, Inc., 384 Mass. 628, 428 N.E.2d 139 (1981); Castonguay v. Castonguay, 306 N.W.2d 143 (Minn. 1981); Gulf Mortgage and Realty Invs. v. Alten, 282 Pa.Super. 230, 422 A.2d 1090 (1980). We note in that respect that N.J.S.A. 2A:17-16 makes shares in any corporation subject to levy and execution. We need not, and do not decide whether restricted stock is exempt from this statutory mandate where the prohibition against transfer is reasonable under N.J.S.A. 14A:7-12. We merely observe that a non-interest bearing note which matures on the whim of the surviving shareholder offers the judgment creditor little or no protection. A note is not a substitute for immediate satisfaction, in whole or part, of the judgment. We view this contractual provision as a thinly disguised mechanism to shelter the assets of the judgment debtor.
Of course, we are cognizant and sensitive to the rights of the surviving shareholder. We recognize that the forced sale of defendant's restricted shares has the potential to disrupt the business of the corporation and vitally affects Reda's rights. We are nevertheless convinced that Reda's interests can fairly be accommodated under the framework of N.J.S.A. 14A:7-12. That statute grants the corporation an option to acquire restricted securities at their fair value where a restraint on alienation has been found to be unreasonable and against public policy. N.J.S.A. 14A:7-12(4). The Italian Chalet, Inc. and the II Villagio, Inc. thus have the right to purchase defendant's shares. As we noted earlier, whether this option is exercised or the shares are sold by execution, the proceeds are to be made available to the plaintiff subject to the rights of other creditors.
*426 The order of the Family Part is reversed and the matter is remanded for further proceedings consistent with this opinion.