845 A.2d 707 (2004)
368 N.J. Super. 215
Cynthia EATON (f/k/a Cynthia Grau), Plaintiff-Appellant/Cross-Respondent,
v.
Justin G. GRAU, Defendant-Respondent/CrossAppellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 8, 2004.
Decided April 8, 2004.
*708 *709 Smits & Solotoff, Morristown, attorneys for plaintiff-appellant/cross-respondent (Patricia Garity Smits, of counsel, and on the brief, with Eric S. Solotoff and Sarah L. Krieger).
Gebhardt & Kiefer, attorneys for defendant-respondent/cross-appellant (William J. Rudnick, on the brief).
Before Judges NEWMAN, FALL and PARRILLO.
The opinion of the court was delivered by
PARRILLO, J.A.D.
In this matrimonial matter, plaintiff Cynthia Eaton appeals from an order of the Family Part denying her post-divorce motion to compel defendant James Grau to remove her name from the mortgage of a property formerly owned by both parties during their marriage. Defendant crossappeals from that portion of the order denying his cross-motion for attorney fees. We affirm.
The salient facts are as follows. The parties were married on September 12, 1986 and separated in April 1997. On April 9, 1997, plaintiff signed a quit claim deed transferring her interest in the marital home, located at 1226 Route # 31 in Lebanon, to defendant in exchange for his agreement to waive all rights to a home she was purchasing, also in Lebanon, with proceeds from a substantial inheritance. The deed was recorded on December 2, 1997.
Negotiations over the terms of the divorce ensued over the course of a number of months, with benefit of counsel on both sides. On January 19, 2000, the parties entered into a 41-page property settlement agreement (PSA) that was incorporated into the final judgment of divorce entered on January 31, 2000. At the uncontested divorce proceeding, the parties represented that they understood the PSA to embody their full intentions and to stand as "a fair and equitable settlement or resolution to the issues that flow from the marital relationship[.]" On this very score, the PSA itself contains an "incorporation" provision, at paragraph 9.5, which states:
The parties have incorporated into this Agreement their entire understanding, and no oral statements or prior written matter extrinsic to this Agreement shall have force or effect. This Agreement supersedes all contracts, agreements, commitments, and offers of every kind or nature, oral or written, at any time heretofore made by the parties. The purpose of this agreement is to regularize and crystallize the legal relations of the parties; and there are no representations, warranties, covenants or undertakings other than those expressly set forth in the framework of this Agreement.
The PSA, at paragraph 1.1, also confirmed the transfer of plaintiff's interest in the marital home to defendant which had already taken place by quit claim deed recorded on December 2, 1997. At the time of divorce, however, the marital residence was in foreclosure. Thus, the parties incorporated into the PSA a provision, at paragraph 2.2, requiring defendant to pay the mortgage arrears and bring the loan obligation current. The PSA also contained a provision, paragraph 1.2, addressing defendant's continuing financial obligation as to the mortgage on the former marital residence, requiring defendant to hold plaintiff harmless for obligations *710 arising out of his ownership. Specifically, the provision states:
The parties agree that the Wife shall have no further liability with respect to the mortgage indebtedness on the Route 31 property, the repairs thereon or any other obligations whatsoever. The Husband shall continue to be fully and solely responsible for all future payments of the Note and Mortgage due on the property, together with real estate taxes and all other expenses related thereto. The Husband agrees to indemnify and hold the Wife harmless from any and all further obligations from ownership of the property including, but not limited to, future claims of creditors, state, federal and municipal taxing authorities and the first mortgagee which are related to the property previously conveyed by the Wife.
[(Emphasis added).]
Significantly, for present purposes, the PSA does not require defendant to remove plaintiff's name from the mortgage. Neither does the PSA require defendant to refinance or sell the former marital residence, even though that eventuality was discussed during negotiations. According to defendant, because the marital home was in foreclosure at the time, refinancing was not a viable option. He has since certified that "[w]e discussed the fact that her name would continue to be on the mortgage and the fact that there was nothing I could do about it."
And finally, as to the relationship of the parties going forward, paragraph 9.6 of the PSA provides:
The parties agree that at all times hereinafter they may live separate and apart from each other at such place or places as he or she may from time to time choose or deem fit, and each party shall be free from interference, authority and control, direct or indirect, by the other as fully as if he or she were single and unmarried. Neither shall harass the other, compel, or attempt to compel the other to cohabit or dwell with him or her.
Following entry of the final judgment of divorce, defendant used a lump sum alimony payment from plaintiff of $30,000 to pay the arrearages on the mortgage and bring the property out of foreclosure. By late 2001, however, defendant began to experience financial difficulties once again and was unable to meet his monthly mortgage obligation. As a result, he was served on January 29, 2002, with a complaint for foreclosure, which also named plaintiff.
At the time, plaintiff was applying for a new mortgage on her home. She failed to qualify, however, because, according to plaintiff, her name remained on the former marital home which was then in foreclosure. Yet there were other events adversely affecting her credit. Plaintiff's credit report reveals a 1997 judgment for $564 in favor of Hunterdon Medical Center; the previous 1999 foreclosure action against the marital property; and a 1998 State of New Jersey tax lien for $1,594 all negative credit events which occurred prior to the divorce. In addition, the credit report identifies the existence of a postdivorce judgment against plaintiff for $440. Plaintiff ultimately refinanced her home using her current husband's credit only. In any event, on May 15, 2000, defendant paid the mortgage arrearages and brought the property out of foreclosure.
On July 28, 2002, plaintiff filed a motion in the Family Part seeking to compel defendant to remove her name from the mortgage on the former marital residence within thirty days by refinancing it or, if unable to do so, to sell the property. Defendant cross-moved for, among other things, attorneys' fees. The motion judge *711 denied both requests. As to the former, she reasoned:
Unfortunately for Plaintiff, the [Agreement] does not require Defendant to refinance and remove her name from the mortgage. While this court was initially satisfied that his obligation to "hold her harmless" was broad enough to encompass an obligation not to negatively affect her credit rating, that phrase appears to be very specifically related to "obligations from ownership of the property." Since Plaintiff has not been held obligated as to "ownership" she has no basis for this request.
On appeal, plaintiff argues that the motion judge erred by not interpreting the "hold harmless" provision of the PSA as requiring defendant to remove plaintiff's name from the mortgage by either refinancing or selling the encumbered property. We disagree.

I
The issue in this case arises out of the not uncommon divorce situation where, for consideration, ownership of the former marital residence is turned over to one party while both remain on the mortgage and accompanying note and are thus liable for payment thereon. This is because it is not likely that the financial institution that holds the mortgage will readily agree to take the non-owner party's name off the loan documents. And while it is possible to stipulate in the PSA who is to make the monthly payment, that does not absolve the other party from his or her obligation to the lender. Thus, if the party who is supposed to make the monthly payment defaults, not only will the other party be responsible for the amount dueplus late chargesbut his or her credit rating could be significantly damaged. One way to address such situations is for the parties to agree in advance that the owner will refinance or take out a mortgage in his or her own name and pay off the existing mortgage on the property within a specified period of time. Of course, if the single party cannot afford or qualify for refinancing, both parties may agree to remain owners until a date certain within which either the mortgage is refinanced or the house is sold.
Needless to say, neither remedy was provided for in the PSA at issue in this case. Instead, the parties settled on a "hold harmless" provision wherein "[t]he husband agrees to indemnify and hold the wife harmless from any and all further obligations from ownership of the property...." By forcing defendant now to either refinance or sell the property, plaintiff in effect seeks to expand the "hold harmless" clause to incorporate remedial measures neither bargained nor provided for in the PSA. This she cannot do.
There is no doubt that the "hold harmless" provision was a property settlement of joint financial obligations in the nature of equitable distribution and not in the nature of either alimony or support. Therefore, "applications for relief from equitable distribution provisions contained in a judgment of divorce are subject to [R. 4:50-1] and not, as in the case of alimony, support, custody, and other matters of continuing jurisdiction of the court, subject to a `changed circumstances' standard." Pressler, Current N.J. Court Rules, comment 1.7 on R. 4:50-1 (2004) (citing Miller v. Miller, 160 N.J. 408, 418, 734 A.2d 752 (1999)); see also Harrington v. Harrington, 281 N.J.Super. 39, 48, 656 A.2d 456 (App.Div.), certif. denied, 142 N.J. 455, 663 A.2d 1361 (1995). Rule 4:50-1 "requires proof of exceptional and compelling circumstances" as it is "[d]esigned to balance the interests of finality of judgments and judicial efficiency against the interest of equity and fairness." Harrington, supra, *712 281 N.J.Super. at 48, 656 A.2d 456 (citing Baumann v. Marinaro, 95 N.J. 380, 392, 471 A.2d 395 (1984)). "[T]o establish the right to such relief, it must be shown that enforcement of the order or judgment would be unjust, oppressive or inequitable." Id. A party is entitled to a plenary hearing on her motion where the evidence shows the existence of a genuine issue of material fact that she is entitled to relief. Barrie v. Barrie, 154 N.J.Super. 301, 303-04, 381 A.2d 374 (App.Div.1977), certif. denied, 75 N.J. 601, 384 A.2d 831 (1978). However, relief is granted sparingly. Housing Auth. of Morristown v. Little, 135 N.J. 274, 283-84, 639 A.2d 286 (1994). A trial judge's decision whether to allow or deny such relief on one of the six specified grounds in Rule 4:50-1 should be "left undisturbed unless it results from a clear abuse of discretion." Pressler, supra, comment 1.1 on R. 4:50-1 (citing Housing Auth., supra, 135 N.J. at 283-84, 639 A.2d 286;) Hodgson v. Applegate, 31 N.J. 29, 37, 155 A.2d 97 (1959); Shammas v. Shammas, 9 N.J. 321, 329, 88 A.2d 204 (1952).
Here, there is absolutely no proof of mistake, newly discovered evidence, fraud, overreaching, unconscionability, or any other enumerated ground to warrant modification of the equitable distribution provisions of the PSA. On the contrary, at the time the "hold harmless" clause was drafted, both parties were represented by counsel. Negotiations were extensive and occurred over the course of several months. Significantly, plaintiff was aware that, at the time, the marital residence was in foreclosure due to defendant's impaired financial condition. Indeed, the parties even discussed the possibility of removing plaintiff's name from the mortgage, but evidently that option was not viable and was rejected, in favor of the "hold harmless" remedy. Nor was any provision made for future refinancing or sale even though it was reasonably foreseeable, given defendant's then current failure to timely remit regular mortgage payments, that the former marital home may again fall into foreclosure. Since then, nothing exceptional has transpired to justify the extraordinary relief now requested.
Plaintiff nevertheless insists that she is not seeking modification of the PSA, but rather enforcement of the "hold harmless" clause which, she claims, protects her against the harm to her credit rating she experienced as a result of the second foreclosure. The motion judge disagreed, finding that the plain language of the provision clearly and specifically relates to direct financial obligations arising from ownership of the property, as where a judgment is entered against both parties following foreclosure.
We are in substantial accord with that view. In other words, we read the obligation to "hold harmless" in this case to protect against both plaintiff's liability to third parties and actual losses sustained by her to the extent she herself paid off some of the mortgage debt and thus had a right of subrogation against defendant. Contrary to plaintiff's expansive interpretation, however, we do not read the obligation to further require defendant to take preventative or preemptive steps to avoid actual loss to plaintiff. To do so would, as previously noted, insert remedies into the PSA that were the subject of negotiation but specifically not included at the time of execution, and would in effect make a "better contract for plaintiff than the parties themselves have seen fit to enter into." East Brunswick Sewerage Authority v. East Mill Associates, Inc., 365 N.J.Super. 120, 125, 838 A.2d 494 (App.Div.2004) (citing Washington Construction Co. v. Spinella, 8 N.J. 212, 217, 84 A.2d 617 (1951)). And while incorporation *713 of a PSA into a divorce decree does not render it immutable, Konzelman v. Konzelman, 158 N.J. 185, 194, 729 A.2d 7 (1999), nor its terms solely governed by contract law, ibid.; Lepis v. Lepis, 83 N.J. 139, 148, 416 A.2d 45 (1980), nevertheless, if found to be fair and just, it is specifically enforceable in equity. Schlemm v. Schlemm, 31 N.J. 557, 581-82, 158 A.2d 508 (1960). See also Glass v. Glass, 366 N.J.Super. 357, 372, 841 A.2d 451 (App. Div.2004). Here, we perceive no inequity or manifest injustice in enforcing the plain and clear terms of the PSA as found by the motion judge.
To be sure, there may be other compensable fiscal injury encompassed by the "hold harmless" clause at issue in this case, such as damage to plaintiff's credit rating or other harm related to her fiscal reputation. However, we need not here define its outer parameters because we are satisfied that, on this record, plaintiff has proven no such harm. Her new home was ultimately refinanced, albeit using her current husband's credit. As for the initial denial, plaintiff has failed to demonstrate that it was the result of the most recent foreclosure action as opposed to other negative credit events, both pre-and postdivorce, appearing on her credit report.
In summary, the "hold harmless" clause of the PSA is plain and clear and does not require defendant to remove plaintiff's name from the mortgage nor otherwise provide for the relief plaintiff now seeks. Plaintiff points to no exceptional circumstances warranting modification or reformation of the PSA to afford remedies previously addressed and rejected by the parties. And even assuming damage to credit rating is the kind of harm against which the PSA is intended to hold plaintiff harmless, plaintiff has failed to adequately establish such harm or that it is, in any event, remediable by the prophylactic measures she presently seeks.
We also reject plaintiff's subsidiary argument that by allowing the property to go into foreclosure, defendant has exercised indirect control over plaintiff in violation of paragraph 9.6 of the PSA, which provides:
The parties agree that at all times hereinafter they may live separate and apart from each other at such place or places as he or she may from time to time choose or deem fit, and each party shall be free from interference, authority and control, direct or indirect, by the other as fully as if he or she were single and unmarried. Neither shall harass the other, compel, or attempt to compel the other to cohabit or dwell with him or her.
Clearly, the financial misfortune of defendant, of which plaintiff was aware at the time the PSA was executed, was not the type of willful, purposeful conduct contemplated by this provision. Again, even if it were, the language of the PSA could not reasonably be construed as requiring the relief plaintiff seeks.

II
As to defendant's cross-appeal, we perceive no error in the denial of his motion for counsel fees. An allowance for counsel fees and costs in a family action is discretionary. R. 4:42-9(a)(1). See also Williams v. Williams, 59 N.J. 229, 233, 281 A.2d 273 (1971); Kingsdorf v. Kingsdorf, 351 N.J.Super. 144, 157-58, 797 A.2d 206 (App.Div.2002). Considering the factors enumerated in Rule 5:3-5(c), we perceive no abuse of discretion in the denial of counsel fees in this case. Plaintiff's motion was neither frivolous nor instituted for purposes of harassment, or as a "substantial form of economic coercion." Kozak v. Kozak, 280 N.J.Super. 272, 277-79, 655 A.2d 95 (Ch.Div.1994); see also Chestone *714 v. Chestone, 285 N.J.Super. 453, 466, 667 A.2d 371 (App.Div.1995).
Affirmed.