NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3207-15T1

ALI SHAHEED JONES-MUHAMMAD,

 Plaintiff-Appellant,

v.

KRISTINE OTT,

 Defendant-Respondent.
______________________________________________

 Submitted May 2, 2017 – Decided October 11, 2017

 Before Judges Messano and Grall.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Family Part,
 Essex County, Docket No. FM-07-1350-11.

 W. Lois Kahagi, attorney for appellant.

 Snyder Sarno D'Aniello Maceri & da Costa,
 LLC, attorneys for respondent (Angelo Sarno,
 of counsel and on the brief; Michelle A.
 Wortmann, on the brief).

PER CURIAM

 Plaintiff Ali Shaheed Jones-Muhammad and defendant Kristine

Ott married in 1997 and separated in 2007. Plaintiff filed the
complaint in 2010, and they were divorced on March 28, 2013.1

The judgment incorporates their marital settlement agreement

(MSA). Plaintiff appeals a post-judgment order enforcing

equitable distribution of the marital residence, transfer of

responsibility for making the mortgage payments, and plaintiff's

assumption of sole responsibility for his unpaid income taxes.

Defendant contends we should affirm.

 The order resolves a motion defendant filed in March 2015,

when she learned the principal balance on the mortgage was

higher than stipulated in the MSA, and another she filed in

October 2015, because a title search disclosed recorded federal

income tax liens that exceeded the home's value. As a

consequence of those liens, defendant could not close on a

contract to sell the home for $384,000 scheduled for August

2015.

 The February 26, 2016, order requires plaintiff to retake

title to the home he conveyed and pay her $75,000 to address the

loss she suffered as a consequence of the liens, and a $10,000

counsel fee. It requires plaintiff to pay the $75,000 in

fifteen $5000 monthly installments commencing on March 15, 2016

1
 The judgment, a transcript of the first of two motion hearings
and several exhibits submitted on the motions are not included
in the record on appeal.

 2 A-3207-15T1
plus "interest on the total lump sum at 3% per annum" at the end

of the term. The counsel fee was due by April 30, 2016.

 Plaintiff acknowledges his liability and does not dispute

the amount of the award. He contends the judge failed to

consider his ability to pay the $75,000 award at the rate

established. He also seeks reversal of the counsel fee, because

it was not supported by an affidavit of services and exceeded

the flat fee defendant was charged. With the exception of the

counsel fee, which was awarded without a certification of

services and must be remanded, we affirm.

 I.

 During the marriage, plaintiff's income was from his work

as a performer, composer, recording artist, and producer. His

income includes royalties and profit from business entities.

While they were together, defendant assisted plaintiff,

travelled with him when he was on tour and had no significant

earnings. As stipulated in the MSA, plaintiff's average income

was $211,000 during the four years preceding divorce and they

imputed defendant's earnings at $35,000 annually. Plaintiff

focused on music and entrusted his managers to handle his

personal finances and write his checks.

 3 A-3207-15T1
 Defendant agreed to accept reduced alimony for a limited

duration, $3500 monthly for fifty-six months, as consideration

for their agreement on equitable distribution.2

 By way of the MSA provisions on equitable distribution,

defendant was to acquire the marital residence and all of its

equity free and clear of plaintiff's interest. Plaintiff had

purchased the home prior to the marriage, and the title and

mortgage were in his name. They agreed the home was worth

$300,000, encumbered by no debt other than a mortgage securing a

$230,000 loan from Chase Bank (Chase), and it had approximately

$70,000 of equity. Plaintiff assured defendant he was "not

aware of" any judgment or lien against the home other than the

mortgage, and defendant gave him the same assurance. They

agreed neither would "further encumber the residence."

 In further consideration of the alimony, plaintiff assumed

sole responsibility for his income tax liability and "promised

to indemnify defendant and hold her" harmless with respect to

"his liability (including taxes, penalties, interest and

2
 The parties had previously divided their personal property, and
they agreed each would retain their bank and investment accounts
— defendant a $60,000 annuity, and plaintiff an investment
account worth less than $2000.

 4 A-3207-15T1
accounting/legal fees) assessed against him as a result of [his]

failure . . . to pay any taxes, interest or penalties."3

 The MSA addresses transfer of the home's title and

responsibility for paying the mortgage from plaintiff to

defendant. Plaintiff agreed to bring payments on the mortgage

current by the date of divorce and make his first alimony

payment on April 1, 2013. Defendant agreed to make the mortgage

payments as of that date.

 They did not follow the plan for transfer, but they had

also agreed to "make sincere efforts between them to settle"

before going to court. Plaintiff did not bring the mortgage

payments current by the date of divorce, because he was in the

process of securing a loan modification from Chase. The

modification would not take effect unless he made three "trial"

payments at the modified rate. He made the last "trial" payment

on June 1, 2013, and the modification took effect on July 1.

 To the extent plaintiff's loan modification brought

payments current, it was accomplished by adding debt,

$37,584.91, to the principal. The additional debt included

past-due mortgage payments and interest and brought the balance

3
 The same paragraph of the MSA, includes a similarly stated
obligation for defendant, but there is no indication she had any
tax liability.

 5 A-3207-15T1
to $266,654.91. The monthly payments were lower, $1914.01, but

payable over a term twice the length. Under the mortgage in

place, the monthly mortgage payment was $2552.14, $1539.27 of

which was for principal and interest, with interest at 2.852%.4

 The parties' explanations for deviating from the payment

plan were similar but not identical. By defendant's account in

"late spring 2013," plaintiff told her he was behind on

payments, promised to bring them current and said he would

continue making them until he had. Plaintiff acknowledges the

discussion and his promise to bring those expenses current but

denies any agreement on future payments.

 In any event, plaintiff did not give defendant the

information she would need to pay the mortgage until much later.

Starting in April 2013 and ending in February 2015, the parties

exchanged emails discussing the home's carrying costs.

Plaintiff discussed his struggle to bring the mortgage current.

Defendant inquired about homeowner's insurance, the amount of

the payments and the balance. In November 2014, he gave

4
 The amounts stated were reported by Chase in a loan
modification agreement offered to plaintiff near the time of
divorce. He was required to accept by March 23, 2013. The
Chase documents indicate that $1012.87 of both the current and
lower modified payments was for escrow covering property taxes
and homeowner's insurance.

 6 A-3207-15T1
defendant the name of the lender who had purchased his loan and

mortgage from Chase. Within two weeks of receiving that

essential information, defendant obtained a statement showing a

monthly payment of $3126.13, outstanding payments totaling

$17,878.46, and $258,626 principal.5 Despite defendant's several

requests for documentation on loan modifications and payments,

which she was not able to obtain from the lender, and a request

from her attorney, plaintiff did not provide the information.

The final request was made in February 2015.

 By early March, defendant concluded she could not afford

the payments, made some repairs and listed her home for sale.

She also filed a motion to enforce plaintiff's obligations under

the MSA. On June 8, the judge entered an order directing

plaintiff to sign authorizations requiring the first and second

mortgage lenders to release all relevant information. He

reserved decision on relief.

 While the first motion was pending, defendant received and

accepted an offer to purchase the home for $384,000 in August

2015. In anticipation of the closing, she moved. The federal

income tax liens disclosed by the title search amounted to

5
 The statement and figures are referenced in the certification
defendant submitted on the motion, but the statement is not in
the record on appeal.

 7 A-3207-15T1
$610,197.10. The liability reflected on the notices of tax lien

was actually less: $521,841.67, when defendant discovered the

liens in August 2015, and $258,366.60, when the judge signed the

order at issue on this appeal in February 2016.6 During the

motion hearing, the judge indicated that the total was about

$500,000. The observation demonstrates review of the notices,

which indicated the balance would be significantly lower by

February 2016.

 On her second motion, defendant asserted plaintiff's

violation of his obligation to disclose the income tax liens at

the time of divorce and sought enforcement of their agreement on

equitable distribution, which includes the hold harmless clause.

She requested alternative forms of relief: an order compelling

plaintiff to remove all recorded liens other than the mortgage

6
 The Notice of Federal Tax Lien associated with each recorded
lien includes the following information: "For each assessment
listed below, unless notice of the lien is refiled by the date
given in column (e), this notice shall, on the day following
such date, operate as a certificate of release[.]"
 By August 2015, the last refiling date had passed for three
of the four tax liabilities stated in the notice of lien
recorded in 2006 and one of the liabilities stated in the lien
recorded in 2008 had expired. By February 2016, all four
liabilities recorded on the lien filed in 2006 and two of the
liabilities listed on the lien recorded in 2008 had expired.
The third liability listed on the lien recorded in 2008 will
expire in December 2017, and the liabilities listed on the lien
recorded in 2011, a total of $144,874, is scheduled to expire in
December 2021.

 8 A-3207-15T1
and eliminate debt on the mortgage in excess of $230,000; or if

he could not do that, an order compelling him to retake the

deed, pay the expenses she incurred, and the $154,000 she lost

with the sale.

 Plaintiff filed a cross-motion. Acknowledging his sole

responsibility for the tax liabilities and his obligation to

address defendant's loss, he denied knowledge of the recorded

liens at the time of divorce. He did not assert he was unable

to pay defendant damages. He offered reasons for not knowing

about the liens. His only requests were for the judge to

consider defendant's failure to pay the mortgage as of April 1,

2013 and to have the agent representing him before the IRS

attend the conference to report on the status of a compromise

under negotiation that could reduce the obligation secured by

the deed.

 During the argument on that motion, the judge said he did

not believe plaintiff's denial of awareness of the tax liens

against the residence at the time of divorce, indicating the IRS

gives notice and that plaintiff said he had been working with

the IRS since 2013. As to ability to pay, the judge mentioned

that plaintiff's group had just released a new album and he did

not believe plaintiff was not making any money and acknowledged

that he needed current information on the parties' financial

 9 A-3207-15T1
status. Stating he did not know whether plaintiff's claim that

his managers failed to notify him was true or not, the judge

said, "[t]hey're his liens."

 Following a colloquy on solutions to address defendant's

lost $384,000 contract, the judge suggested the attorneys

consider a solution involving plaintiff retaking the home and

extending alimony. Defendant's attorney advised they were

discussing a settlement "along [those] lines," and the problem

was "quantifying the amount" owed. Plaintiff's attorney

responded: "Exactly." Plaintiff's attorney presented no

argument about defendant's inability to pay, the judge entered

an order directing exchange and submission of recent tax

returns, case information statements (CISs) and written

statements of their positions on damages with supporting

documentation. The judge reserved decision on damages and

counsel fees pending the submissions, and he denied all relief

not addressed.

 The tax returns and CISs revealed plaintiff earned at a

slightly higher rate than he had during the four years preceding

divorce. The average of his earnings between January 1, 2013

 10 A-3207-15T1
and October 31, 2015 was $239,172.7 His CIS also reports monthly

payments to the IRS and the State of the New Jersey in excess of

$17,000.

 The parties submitted their positions in writing in

December 2015. Neither discussed legal principles governing

enforcement and modification of MSAs but both set forth

positions on damages. See Eaton v. Grau, 368 N.J. Super. 215

(App. Div. 2004). In response to the colloquy on the motion

hearing, defendant's attorney indicated her client would accept

payments on a monthly basis in the amount of $5000.

 As to damages, both parties started with the $384,000 offer

to purchase, reduced by the $230,000 debt on the mortgage stated

in the MSA — $154,000. Defendant recognized the $154,000 should

be reduced by the real estate commission stated in the contract

of sale ($19,200). She sought additions to equity covering

repairs she made prior to sale and carrying costs she paid after

she moved.8

7
 The stated average is computed on the "Total income" reported
on plaintiff's 2013 and 2014 1040s and the "Gross Earnings" from
January 1 to October 31, 2015 reported on his CIS. Defendant
notes that plaintiff's 2013 "Foreign Tax Credit" Form 1116
reports $2,119,866 "Gross income from all sources," including
$844,597 "income from K-1s."
8
 The contract was submitted in this trial court but not on
appeal.

 11 A-3207-15T1
 Defendant also requested a counsel fee for services

rendered on the motions in a total amount of $14,749.50, and she

indicated a certification of services would "be submitted within

a timeframe to be directed by the court." The judge awarded a

$10,000 fee although the certifications provided earlier

indicated defendant was charged a flat fee and, at that point,

had received services that would have costs much less than

$10,000.

 Plaintiff's position statement does not include a

discussion of his ability to pay, a payment schedule or the

information in his tax returns or CIS. He simply requested

reductions from the $154,000. One was for closing costs

estimated at $25,000 to $28,000, which he suggested could be

determined by preparing a "dummy" HUD-statement. In lieu of a

reasonable rent, he sought a reduction equal to payments

defendant would have made on the mortgage prior to the loan

modification, $2552.14, for thirty-three months — the period

between April 1, 2013 and date of his written submission. He

also sought a reduction for late fees payable at the rate of

$2526 monthly.

 Consistent with the submissions, the judge predicated the

award on the value of defendant's lost sale, $154,000, minus

expenses that would have been incurred had the sale occurred.

 12 A-3207-15T1
The order provides the only explanation for the result:

"$154,000 in equity, less $24,000 closing costs, less $55,000

(reasonable monthly rental costs imputed to defendant for the

subject premises — i.e. [d]efendant cannot live rent free)."

There is no explanation for payment of the $75,000 at the rate

of $5000 monthly.

 As to liability, the judge determined plaintiff "had actual

and/or constructive knowledge that the tax liens attached to the

marital residence at the time of [divorce]," resulting from his

or his agents' conduct, and affecting the marketability of the

residence to the extent that it was worthless to defendant.

 As to counsel fees, the order indicates: Plaintiff "acted

in bad faith with respect to his actions prior to, and

subsequent to, the Judgment of Divorce," which caused defendant

to file motions, including his failure to sign authorizations

for defendant to speak with the mortgage lender and provide

proof of life insurance. On those findings, the judge entered

the order plaintiff appeals.

 II.

 Repeating what we said at the outset of this opinion,

plaintiff acknowledges his liability and does not dispute the

$75,000 award. He simply contends the judge failed to consider

his ability to pay $5000 monthly. He also seeks reversal of the

 13 A-3207-15T1
counsel fees, because it was not supported by an affidavit of

services and exceeded the flat fee defendant was charged.

 If there were any doubt about plaintiff's acknowledgement

of liability and acceptance of the amount, it is dispelled by

assertions in his reply brief stating his "absolute intent to

take on the responsibility for his income tax liability" and

that "there is no issue of [plaintiff's] liability in this

appeal." He criticizes the judge's failure to address his

ability to pay and questions "whether the trial court properly

considered [plaintiff's] ability to pay his acknowledged

liability at the rate the trial court established in its

ruling." Plaintiff contends the judge gave "unjustified weight"

to disputed facts, relied on speculation rather than evidence,

abused his discretion and failed to provide an adequate

explication of his findings and reasons. See R. 1:6-6; R. 1:7-

4(a).

 A.

 Motions to enforce or modify equitable distribution involve

the exercise of judicial discretion. Eaton, supra, 368 N.J.

Super. at 222; Whitfield v. Whitfield, 373 N.J. Super. 573, 575

(App. Div. 2004); Castriota v. Castriota, 268 N.J. Super. 417,

421-22 (App. Div. 1993). An exercise of discretion requires "a

conscientious judgment" based on "the law and the particular

 14 A-3207-15T1
circumstances of the case before the court." Higgins v. Polk,

14 N.J. 490, 493 (1954); accord Hand v. Hand, 391 N.J. Super.

102, 111 (App. Div. 2007). And, an explanation of the factual

and legal bases for discretionary determinations made on such

motions is expected. R. 1:7-4(a); Klajman v. Fair Lawn Estates,

292 N.J. Super. 54, 61 (App. Div.) (quoting Curtis v. Finneran,

83 N.J. 563, 569-70 (1980)), certif. denied, 146 N.J. 569

(1996).

 In the absence of a statement of findings and conclusions,

review without remand is more difficult but not foreclosed. See

Isko v. Planning Bd. of Livingston, 51 N.J. 162, 175 (1968)

(noting the commonality and propriety of affirming a valid

determination entered on an erroneous basis); Castriota, supra,

268 N.J. Super. at 421-22 (declining to affirm denial of

enforcement of equitable distribution as an unstated exercise of

discretion, because equitable distribution in not subject to

modification on a showing of changed circumstances); Rosenberg

v. Bunce, 214 N.J. Super. 300, 304-05 (App. Div. 1986)

(reviewing a denial of a motion to open a default judgment and

reversing on the merits); see also R. 2:10-5; Esposito v.

Esposito, 158 N.J. Super. 285, 291-92, 300 (App. Div. 1978)

(exercising original jurisdiction to modify equitable

 15 A-3207-15T1
distribution and affirming determinations not raised on appeal

where the judge had retired and the record was adequate).

 In this case, a limited remand for more assiduous

compliance with Rule 1:7-4(a) prior to our decision was not an

option, because the judge is retired. But a remand for that

reason is not necessary. We are in a position to address issues

plaintiff raised in the trial court and on appeal to determine:

whether a genuine dispute of material fact required a plenary

hearing, see Harrington v. Harrington, 281 N.J. Super. 39, 47

(App. Div.), certif. denied, 142 N.J. 455 (1995); or whether

undisputed and substantial credible evidence in the record as a

whole permits an affirmance of the order, or part of it, for a

different reason than the one stated by the judge. Isko, supra,

51 N.J. at 175; see Monte v. Monte, 212 N.J. Super. 557, 565

(App. Div. 1986) (noting this court's obligation to "decid[e]

whether the determination . . . is supported by substantial

credible proof on the whole record").

 B.

 In the trial court, plaintiff did not ask the judge to

schedule payments of the $75,000 damage award and did not assert

a lack of ability to pay. As the preceding discussion of the

record demonstrates, plaintiff had three opportunities to raise

the issue on the motion addressing the liens imposed as a

 16 A-3207-15T1
consequence of his tax liability: in opposition to the motion;

during argument on the motion; and in his final submission

stating his position on damages. He did not take it, and we

decline to address the issue for that reason.

 It is a well-settled principle that our
 appellate courts will decline to consider
 questions or issues not properly presented
 to the trial court when an opportunity for
 such a presentation is available "unless the
 questions so raised on appeal go to the
 jurisdiction of the trial court or concern
 matters of great public interest."

 [Nieder v. Royal Indem. Ins. Co., 62 N.J.
 229, 234 (1973) (quoting Reynolds Offset
 Co., Inc. v. Summer, 58 N.J. Super. 542, 548
 (App. Div. 1959), certif. denied, 31 N.J.
 554 (1960)).]

 This award, as defendant argues, enforces the MSA's scheme

for equitable distribution — the marital residence and the hold

harmless clause were what the parties bargained for. See Eaton,

supra, 368 N.J. Super. at 224; Castriota, supra, 268 N.J. Super.

at 421-22.9 The judge's insistence on tax returns and CISs

9
 As to the residence, the hold harmless clause shielding
defendant from plaintiff's tax liability was not conditioned on
his ability to pay and the tax liability prevented its the sale.
 As to the value of sale, plaintiff urged calculation based
on mortgage payments defendant would have made. A calculation
based on those payments would not have favored plaintiff.
 (footnote continued next page)

 17 A-3207-15T1
dispels any concern that he based the payment schedule on

unsupported assumptions equating plaintiff's celebrity status

with wealth. The judge had tax returns. On the question of

inability to perform his promise to hold defendant harmless,

plaintiff had the burden of proof. See Morris v. Morris, 263

N.J. Super. 237, 244-45 (App. Div. 1993) (discussing the payor's

 Had he brought the payments current and defendant had made
them starting on April 1, 2013 and ending on August 1, 2015, the
result would have been more favorable to her.
 Defendant would have been making monthly payments of
principal and interest in the amount of $1539.27, on an interest
rate of 2.852%. She would have made twenty-nine payments,
starting on April 1, 2013 and ending on August 1, 2015. Assuming
the worst case scenario from the perspective of accruing equity
in the home — that the April 1, 2013 payment was the first, the
amount owed on debt would have been lower — between $208,595
(calculated at 2.8%) and $208,750 (calculated at 2.9%).
 Had plaintiff's suggestion for a reduction based on
payments and established costs of closing been used this would
be the result: the period would be for twenty-nine not thirty-
three months, because no payments would be made after closing:
$384,000 - $209,000 (principal due) = $175,000 (equity) -
$74,012.16 (29 total payments including escrow $2552.14 per
payment) = $100,987.84 (equity - payments) - $19,204 (the only
closing cost supported by evidence) = $81,783.78.
 Moreover, reading the integrated agreement as a whole and
recognizing that the residence and protection from tax liability
was in consideration for the agreement on reduced alimony for a
limited duration, more than the total of numbers on a HUD sheet
was involved. Glass v. Glass, 366 N.J. Super. 357, 371-74 (App.
Div.), certif. denied, 180 N.J. 354 (2004); Morris v. Morris,
263 N.J. Super. 237, 244 (App. Div. 1993) (finding no inequity
in enforcing the parties' integrated agreement fashioned in
light of husband's debt).

 18 A-3207-15T1
obligations to disclose and explain financial information in a

similar situation).

 C. Counsel Fees

 We agree with plaintiff that the award of counsel fees must

be vacated and remanded for reconsideration. The judge erred by

considering it without a complete certification of services

permitting assessment of the reasonableness of the fees charged.

Here, a certification detailing services and a discussion of

legal principles relied upon to award a counsel fee in excess of

the flat fee charged were essential. See N.J.S.A. 2A:34-23; R.

4:24-9 (b)-(d); R. 5:3-5(c); Mani v. Mani, 183 N.J. 70, 93-95

(2005).

 On remand, the judge should not accept the judge's

conclusion, stated in the February 26, 2016 order, that

plaintiff had actual knowledge of liens at the time of divorce

and acted in bad faith by failing to disclose them. In the

trial court and on appeal, plaintiff claimed that a genuine

factual dispute precluded a finding that he knew about the liens

at the time of divorce without a plenary hearing, and that point

is well-taken.

 The notices of tax liens and plaintiff's statement that he

had been working with the IRS since 2013 reasonably supported an

inference that plaintiff knew about the liens prior to divorce.

 19 A-3207-15T1
But plaintiff denied having that knowledge, and he provided

sufficient plausible explanations to require a plenary hearing.

We refer to plaintiff's assertions of reliance on business

managers to handle his personal finances and write his checks;

Chase's approval of the loan modification; and the silence on

the subject of liens from the attorneys providing services in

divorce proceeding given the MSA's contemplation of transfer of

title by quit claim deed.10

 The award of attorney's fees is vacated and remanded for

consideration anew in conformity with this decision; the order

of judgment appealed from is otherwise affirmed; jurisdiction is

not retained.

10
 Had plaintiff disputed liability based on a knowing false
representation that the residence was encumbered by liens other
than the mortgage, we would have affirmed on a different ground
— enforcement of the MSA's undisputedly applicable hold harmless
clause.

 20 A-3207-15T1