**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2579-20

K.J.H.,

     Plaintiff-Appellant,

v.

T.T., JR.,

     Defendant-Respondent.

_____

Submitted September 14, 2022 – Decided September 28, 2022

Before Judges Gooden Brown and Mitterhoff.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-1727-20.

K.J.H., appellant pro se.

Einhorn, Barbarito, Frost & Botwinick, PC, attorneys for respondent (Matthew James Troiano, on the brief).

PER CURIAM

Plaintiff K.J.H.[1] appeals pro se from two orders of the Hudson County Superior Court, Chancery Division, Family Part. The first order, dated March 9, 2020, dismissed her domestic violence complaint and temporary restraining order (TRO) against the father of the child, defendant T.T. Jr., with prejudice. The second order, dated March 31, 2021, awarded defendant attorneys' fees. We affirm.

## I.

We discern the following facts from the record. Plaintiff and defendant are unmarried co-parents sharing joint custody of their now 8-year-old son. In 2015, after a trial, a Georgia family court awarded the parties joint legal custody by final order dated September 10, 2015. Plaintiff had primary physical custody of the child and defendant had visitation on alternating weekends. The crux of this case begins with a ruling issued on January 20, 2020, by Judge Belinda E. Edwards of the Superior Court, Family Division, of Fulton County Georgia adjusting the original order by changing primary physical custody of the child from plaintiff to defendant. Judge Edwards made several adverse findings against plaintiff, including that plaintiff had acted in bad faith by alienating the

---

[1] We use initials to protect the privacy interests. See Rule. 1:38-3(c).

child from defendant and disregarding the court's orders. The court directed that the original custody order from 2015 would remain in effect until the exchange of physical custody ordered to occur upon the child's completion of the school year in June 2020. As a result, defendant would continue to have his rights to daily Skype video calls and in-person visitation on the second and fourth weekends of each month until the exchange occurred. The Georgia court's order and findings were communicated to plaintiff and defendant via email from the Georgia court on January 20, 2020.[2]

On February 11, 2020, just three weeks after defendant was awarded primary physical custody, plaintiff filed a domestic violence civil complaint against defendant, accusing defendant of harassment. The predicate act of harassment was defendant's request that the Weehawken Police Department perform a welfare check of the child after he was unable to see or contact the child for several days. The welfare check occurred on February 7, 2020. Plaintiff claimed that she had told defendant that the child was sick and that, therefore, there was no basis for the welfare check other than to harass plaintiff.

---

[2]  The subject heading of the Georgia court email to plaintiff and defendant was "Custody Ruling Email."

A-2579-20

Plaintiff obtained a TRO which included a request for protection of the child, resulting in an absolute bar of contact between the child and defendant.

On March 9, 2020, the parties appeared before the judge for a final restraining order (FRO) hearing on whether defendant's request for a welfare check on his child after being unable to visit, speak, interact with, or see the child between February 4, 2020, and February 7, 2020, constituted harassment, and whether an order of protection was required.

At trial, after plaintiff's direct testimony, Captain Sean Kelly of the Weehawken Police Department testified about his interactions with plaintiff. Although he testified on direct that plaintiff appeared genuinely distressed and anxious when she applied for the TRO, he conceded on cross that she failed to inform him that the Georgia court had recently transferred custody to defendant. He conceded that had he known about the custody ruling he might have had reservations about plaintiff's credibility.

Also admitted into evidence were the Georgia court order[3], documents related to the custody arrangements, the amended TRO, documented

---

[3] On February 27, 2020, Judge Edwards issued her final order on defendant's petition for modification of custody. The content of this decision mirrored the information emailed to plaintiff and defendant by the Georgia court on January 20, 2020. This order was submitted to the court on March 3, 2020, by defendant's counsel.

communications between plaintiff and defendant, the Weehawken Police Department's investigation report, and videos taken by defendant.

Pertinent to this case, the factual findings of Judge Edwards, which pre-date the February 7 welfare check, were read into the record during the March 9, 2020, trial. As a basis for her custody ruling, Judge Edwards found that plaintiff exhibited a pattern of "engag[ing] in intentional, comprehensive, and persistent alienation of the minor child from the petitioner." The examples cited by the Georgia court, and read into the record at the FRO hearing, include:

> [Plaintiff's] January 2018 . . . ex parte temporary protective order in Virginia [made] in order to circumvent [defendant's] parenting time, right to communicate with the child, right to knowledge of the child's whereabouts, education, health, and medical information, prescribed by the court's final order issued September 10, 2015.
>
> [Plaintiff], after the court ruled against her, continued to pursue the protective order in bad faith and continued said action to leverage and prevent the [defendant's] parenting time.
>
> [Plaintiff] consistently failed to make the child available to [defendant] for telephonic or video call communications during the time prescribed by the court's final order issued September 10, 2015, significantly reducing [defendant's] opportunities to communicate with the child on a daily basis to little or almost no daily time.

5

[Plaintiff] falsely and on at least one occasion, presented medical conditions as a reason the minor child could not travel to see his father, and misrepresent[ed] travel and activity restrictions prescribed by healthcare providers for the purpose of circumventing numerous visitations prescribed by the court's final []order, issued September 10, 2015, and degrading quality time between [defendant] and child.

Similarly, the evidence in this case established that plaintiff withheld the child from scheduled visits with the defendant, both in person and via Skype, citing the child's illness as an excuse.

Plaintiff sought to have her father testify as a witness on her behalf. Based on a proffer that his anticipated testimony would describe how the February 7th welfare check made plaintiff feel, the judge disallowed the testimony because plaintiff already testified on the subject. The judge, therefore, determined that her father's testimony would be needlessly cumulative.

At the conclusion of plaintiff's direct case, and considering the documents submitted into evidence, the judge concluded that plaintiff failed to establish the existence of a predicate act under Silver v. Silver, 387 N.J. Super. 112, 125-6 (App. Div. 2006). As a result, he dismissed plaintiff's complaint and TRO with prejudice.

On March 19, 2020, defendant filed an application for attorneys' fees with a supporting affidavit. On March 31, 2021, the judge granted defendant's

6

application for attorneys' fees. The judge found "beyond a doubt that there was bad faith on the part of [plaintiff] in connection with this domestic violence action." He further found "beyond a doubt that . . . she was aware of the actions from . . . Georgia because . . . this was moved into the record as well." The judge awarded defendant attorneys' fees in the amount of $7,087.50 but declined to award defendant travel expenses in the amount of $1,504.99.

On appeal, plaintiff presents the following arguments for our consideration:

POINT I

INEFFECTIVE ASSISTANCE OF COUNSEL

POINT II

VIOLATION OF DUE PROCESS

POINT III

IMPROPER ENFORCEMENT OF AN UNREGISTERED FOREIGN ORDER

POINT IV

MISAPPLICATION OF RES JUDICATA

POINT V

INAPPROPRIATE AWARDING OF ATTORNEY'S FEES

POINT VI

ABUSE OF BROAD DISCRETION

II.

"In our review of a trial court's order entered following trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings."  D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).  "This deferential standard is even more appropriate 'when the evidence is largely testimonial and involves questions of credibility.'"  L.M.F. v. J.A.F., Jr., 421 N.J. Super. 523, 533 (App. Div. 2011) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).  This court "should not disturb the 'factual findings and legal conclusions of the trial judge unless it is convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'"  Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).  However, we review de novo "the trial judge's legal conclusions, and the application of those conclusions to the facts."  Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

A-2579-20

III.

We first reject plaintiff's argument of ineffective assistance of counsel. Ineffective assistance of counsel is not cognizable as a basis for relief in cases arising under the Prevention of Domestic Violence Act (PDVA). A domestic violence complaint, pursuant to the PDVA, is civil in nature. M.S. v. Millburn Police Dept., 197 N.J. 236, 248 (2008). "Unlike a criminal prosecution, in which the state's burden of proof is the familiar beyond a reasonable doubt standard, the [PDVA] tests a victim's entitlement to relief in accordance with the preponderance of the evidence standard, consistent with the lowered burden of proof appropriate in a civil proceeding." J.D. v. M.D.F., 207 N.J. 458, 474 (2011).

Furthermore, "the protections of due process do not require the appointment of counsel for indigents presenting or defending a private party's civil domestic violence action." D.N. v. K.M., 429 N.J. Super. at 606. This is because "unlike the Criminal Code, the [PDVA] is designed to remediate behavior. The [PDVA] does not impose incarceration if the court finds an act of domestic violence has been committed because the Legislature had no intention to 'create a new class of criminal offenses.'" Id. at 605 (quoting J.D. v. M.D.F., 207 NJ 458, 474 2011). Accordingly, as plaintiff has no

A-2579-20

constitutional right to effective counsel in the instant case, there is no viable claim warranting reversal.

## IV.

We reject plaintiff's argument that her constitutional due process rights were violated due to the exclusion of her father's testimony. Determinations pursuant to N.J.R.E. 403, which permits exclusion of cumulative evidence, "should not be overturned on appeal 'unless it can be shown that the trial court palpably abused its discretion, that is, that its finding was so wide off the mark that a manifest denial of justice resulted.'" Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999) (quoting State v. Carter, 91 N.J. 86, 106 (1982)). As the judge found, plaintiff's father's testimony would have just reiterated plaintiff's alleged state of mind. On appeal, plaintiff has not identified what other evidence would have been revealed or how her father's testimony would have impacted the outcome of the case. We discern no abuse of discretion.

## V.

We also reject plaintiff's meritless argument that the trial court improperly enforced an unregistered foreign order.[4] It was undisputed that the Georgia court

---

[4] The trial transcript is clear that the child custody order was certified, and that plaintiff's counsel acknowledged as much on the record during the March 9,
(continued)

had exclusive jurisdiction over the custody dispute, and that the judge did not make or enforce any custody determinations. At the FRO hearing, the judge's determinations were limited to the PDVA issues: he found there was no basis for an FRO, vacated the existing TRO, and dismissed plaintiff's complaint with prejudice. There was no error.

VI.

We also discern no abuse of discretion because the judge disallowed video evidence that allegedly depicted an incident of domestic violence between the parties from 2018.[5] The judge did not consider this evidence because it was the subject of a protective order sought by plaintiff in Virginia and dismissed in 2018. The judge found plaintiff was estopped from challenging the findings below:

> [Plaintiff's] January 2018 . . . ex parte temporary protective order in Virginia [made] in order to circumvent [defendant's] parenting time, right to communicate with the child, right to knowledge of the child's whereabouts, education, health, and medical information, prescribed by the court's final order issued September 10, 2015.

2020, hearing. Plaintiff was aware of the order and voiced her intention to abide by its terms.

[5] Plaintiff claimed that the video showed defendant spitting on her and pushing her at Reagan International Airport while they were exchanging custody.

11                                                      A-2579-20

> [Plaintiff], after the court ruled against her, continued
> to pursue the protective order in bad faith and continued
> said action to leverage and prevent the [defendant's]
> parenting time.

To the extent the judge may have been wrong in framing the legal issue as res judicata, he was justified in barring the evidence based on Judge Edwards's findings that the 2018 TRO was filed in bad faith and for the purpose of interfering with defendant's custodial rights. Those findings, as the judge found, are binding on plaintiff and relevant to the issue of plaintiff's credibility.

## VII.

Finally, we detect no abuse of discretion in the judge's award of attorneys' fees. "Although New Jersey generally disfavors the shifting of attorneys' fees, a prevailing party may recover [attorneys'] fees if they are expressly provided for by statute, court rule, or contract." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 440 (2001) (internal citation omitted). Pursuant to Rule 5:3-5(c), attorneys' fees may be awarded in a family action. See R. 4:42-9(a)(1). Under R. 5:3-5(c), "[a]n allowance for counsel fees and costs in a family action is discretionary." Eaton v. Grau, 368 N.J. Super. 215, 225 (App. Div. 2004). Fee determinations should be disturbed only where there has been a clear abuse of discretion. Giarusso v. Giarusso, 455 N.J. Super. 42, 51 (App. Div. 2018).

The judge found "beyond a doubt that there was bad faith on the part of [plaintiff] in connection with this domestic violence action." The judge based his conclusion on Judge Edwards's February 27, 2020, findings of fact, which established that plaintiff engaged in "intentional, comprehensive, and consistent alienation of the minor child from [defendant]," that plaintiff was fully aware of the adverse ruling against her in Georgia, and that plaintiff attempted to re-litigate those issues anyway. The judge also found that plaintiff misrepresented her situation to the Weehawken Police Department. Although it is unusual to award attorneys' fees to a defendant in a domestic violence case, the judge did not abuse his discretion under these facts.

To the extent we have not addressed plaintiff's remaining arguments, we conclude that they are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13